In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3838

ROBERT H. TILDEN,

*Petitioner-Appellant,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

Appeal from the United States Tax Court.
No. 11089-15 — **Robert N. Armen, Jr.**, *Special Trial Judge.*

ARGUED OCTOBER 6, 2016 — DECIDED JANUARY 13, 2017

Before WOOD, *Chief Judge*, and EASTERBROOK and MANION, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Taxpayers living in the United States have 90 days to file a petition asking the Tax Court to review a notice of deficiency sent by the Commissioner of Internal Revenue. 26 U.S.C. §6213(a). Robert Tilden got such a notice covering his tax years 2005, 2010, 2011, and 2012. The last day to seek review was April 21, 2015. The Tax Court received Tilden's petition on April 29, 2015, and dis-

missed it as untimely. The Commissioner has confessed error—properly so, we conclude.

Although §6213(a) requires petitions to be filed within 90 days, another statute treats mailing as filing. 26 U.S.C. §7502. Section 7502(a) makes the date of the postmark dispositive. Section 7502(b) adds that the mailing-as-filing rule "shall apply in the case of postmarks not made by the United States Postal Service only if and to the extent provided by regulations prescribed by the Secretary." That matters to Tilden, because his lawyer's staff did not put a stamp on the envelope, and the Postal Service did not apply a postmark. Instead the staff purchased postage (both first-class mail and the supplement for certified delivery) from Stamps.com, a service that supplies print-at-home postage so that everyone can enjoy the convenience of a traditional postage meter. The staff printed a label from Stamps.com; it is dated April 21, 2015, and a member of the staff states that she delivered the envelope to the Postal Service in Salt Lake City, Utah, on that date. Tilden contends that this makes the filing timely under 26 C.F.R. §301.7502–1(c)(1)(iii)(B)(1), which reads:

> If the postmark on the envelope is made other than by the U.S. Postal Service—
>
> > (i) The postmark so made must bear a legible date on or before the last date, or the last day of the period, prescribed for filing the document or making the payment; and
> >
> > (ii) The document or payment must be received by the agency, officer, or office with which it is required to be filed not later than the time when a document or payment contained in an envelope that is properly addressed, mailed, and sent by the same class of mail would ordinarily be received if it were postmarked at the same point of origin by the U.S. Postal Service on the last date, or the last day of the period, prescribed for filing the document or making the payment.

In the Tax Court the Commissioner accepted Tilden's contention that the envelope had been delivered to the Postal Service on April 21 but invoked the next principal division, (B)(2):

> If a document or payment described in paragraph (c)(1)(iii)(B)(1) is received after the time when a document or payment so mailed and so postmarked by the U.S. Postal Service would ordinarily be received, the document or payment is treated as having been received at the time when a document or payment so mailed and so postmarked would ordinarily be received if the person who is required to file the document or make the payment establishes—
>
>> (i) That it was actually deposited in the U.S. mail before the last collection of mail from the place of deposit that was postmarked (except for the metered mail) by the U.S. Postal Service on or before the last date, or the last day of the period, prescribed for filing the document or making the payment;
>>
>> (ii) That the delay in receiving the document or payment was due to a delay in the transmission of the U.S. mail; and
>>
>> (iii) The cause of the delay.

By relying on (B)(2) the IRS was supposing that eight days (April 21 to 29) is more than the Postal Service ordinarily takes to deliver certified mail from Utah to Washington, D.C., which would knock out the use of (B)(1) as well. But the Tax Court concluded that both sides had picked the wrong part of the regulation. It thought that the right part is (B)(3), which tells us:

> If the envelope has a postmark made by the U.S. Postal Service in addition to a postmark not so made, the postmark that was not made by the U.S. Postal Service is disregarded, and whether the envelope was mailed in accordance with this paragraph (c)(1)(iii)(B) will be determined solely by applying the rule of paragraph (c)(1)(iii)(A) of this section.

The Tax Court conceded that the Postal Service had not placed a postmark on the envelope. It also observed (what is uncontested) that the envelope had been entered into the Postal Service's tracking system for certified mail on April 23, and the judge thought this just as good as a postmark, which meant that April 23 was the date of filing. That was two days late, so the court dismissed the petition. T.C. Memo 2015–188 (Sept. 22, 2015).

Seeking reconsideration, Tilden observed that the parties had not raised the possibility that tracking data must be treated as a "postmark made by the U.S. Postal Service". The IRS joined Tilden in contending that the judge had been mistaken; abandoning its earlier position, the IRS asked the Tax Court to apply (B)(1) and deem both of its subsections satisfied. But the judge denied the motion, stating that because the 90-day limit in §6213(a) is jurisdictional the court is not obliged to accept the parties' agreement.

At oral argument in this court the judges and counsel discussed whether any of §6213, §7502, or §301.7502–1 creates a rule that is properly called "jurisdictional" under the Supreme Court's current approach to distinguishing truly jurisdictional limits—which a court must enforce even if not raised by the parties, whether or not the litigants agree that a filing is proper—from case-processing rules, which are subject to waiver and forfeiture. Compare *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015) (filing deadlines under the Federal Tort Claims Act are not jurisdictional), and *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990) (all filing deadlines for suits against the United States are presumptively subject to equitable tolling, as truly jurisdictional deadlines are not), with *John R. Sand & Gravel Co. v. United*

*States*, 552 U.S. 130 (2008) (deadline for filing suit in the Court of Federal Claims is jurisdictional), and *Bowles v. Russell*, 551 U.S. 205 (2007) (deadline for filing a notice of appeal in civil litigation is jurisdictional). The parties' briefs in this court cited many appellate decisions calling §6213 jurisdictional, but those decisions precede the Supreme Court's recent cases or fail to analyze their significance. We deferred consideration of the appeal while the parties filed supplemental memoranda on the issue. We have also considered the Tax Court's en banc ruling in *Guralnik v. CIR*, 146 T.C. No. 15 (June 2, 2016), which unanimously concludes that filing deadlines for petitions seeking its review are jurisdictional under the Supreme Court's current approach.

*Kwai Fun Wong* tells us that (a) filing deadlines are presumptively not jurisdictional, but (b) Congress can make them so, without necessarily using magic words such as "jurisdiction". 135 S. Ct. at 1632. As it happens, however, §6213(a) *does* use the magic word. It provides, among other things: "The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition." Tilden does not want either an injunction or a refund; he has yet to pay the assessed deficiencies. But it would be very hard to read §6213(a) as a whole to distinguish these remedies from others, such as ordering the Commissioner to redetermine the deficiency. For many decades the Tax Court and multiple courts of appeals have deemed §6213(a) as a whole to be a jurisdictional limit on the Tax Court's adjudicatory competence. See, e.g., *Patmon and Young Professional Corp. v. CIR*, 55 F.3d 216, 217 (6th Cir. 1995); *Keado v. United States*, 853 F.2d

1209, 1212, 1218–19 (5th Cir. 1988); *Pugsley v. CIR*, 749 F.2d 691, 692 (11th Cir. 1985); *Andrews v. CIR*, 563 F.2d 365, 366 (8th Cir. 1977); *Foster v. CIR*, 445 F.2d 799, 800 (10th Cir. 1971). We think that it would be imprudent to reject that body of precedent, which (given *John R. Sand & Gravel*) places the Tax Court and the Court of Federal Claims, two Article I tribunals, on an equal footing. So we accept *Guralnik*'s conclusion and treat the statutory filing deadline as a jurisdictional one.

But it does not follow that the Tax Court may disregard the parties' agreement that a particular petition has been timely filed. True, litigants cannot stipulate to jurisdiction. But they may agree on the *facts* that determine jurisdiction. See, e.g., *Kenosha v. Bruno*, 412 U.S. 507 (1973); *Railway Co. v. Ramsey*, 89 U.S. (22 Wall.) 322, 323 (1875). For example, if in a suit under the diversity jurisdiction, 28 U.S.C. §1332, the parties agree that the plaintiff is domiciled in Illinois and that the defendant is incorporated in Delaware and has its principal place of business in Texas, a district court need not, indeed must not, look behind that agreement unless the judge suspects that the allegations are collusive. See 28 U.S.C. §1359. The Tax Court did not suspect that Tilden and the Commissioner are colluding to expand its jurisdiction; to the contrary, the Commissioner initially denied that Tilden's petition was timely. So the judge did not have a sound reason to doubt that the envelope was indeed handed to the Postal Service on April 21, 2015, as the Commissioner has conceded throughout. And now that the Commissioner has acknowledged that *all* requirements of (B)(1) have been met—not only deposit on April 21 but also that certified mail often takes eight days to reach the Tax Court from Utah—the only basis

for dismissing Tilden's petition would be a legal conclusion that (B)(3) is the sole subsection entitled to a controlling role.

On that subject we agree with the parties that the Tax Court was mistaken. Part (B)(3) of the regulation specifies what happens if an envelope has both a private postmark and a postmark from the U.S. Postal Service. Tilden's envelope had only one postmark. The regulation does not ask whether a date that is not a "postmark" is as good as a postmark. It asks whether there are competing postmarks.

To say "A is as good as B" is not remotely to show that A *is* B. "Vanilla ice cream is as good as chocolate" does not mean that a customer who orders chocolate must accept vanilla, just because the customer likes both. They are still different. Subsection (B)(3) does not make anything turn on a date *as reliable as* an official postmark. It makes the outcome turn on the date *of* an official postmark. If the Postal Service were to treat tracking data as a form of postmark, that might inform our reading of the regulation, but we could not find any evidence that the Postal Service equates the two.

For what it may be worth, we also doubt the Tax Court's belief that the date an envelope enters the Postal Service's tracking system is a sure indicator of the date the envelope was placed in the mail. The Postal Service does not say that it enters an item into its tracking system as soon as that item is received—and the IRS concedes in this litigation that the Postal Service did not do so for Tilden's petition, in particular. Recall that the Commissioner has acknowledged that the envelope was received by the Postal Service on April 21. It took two days for the Postal Service to enter the 20-digit tracking number into its system, a step taken at a facility in zip code 84199, approximately ten miles away from the Ar-

bor Lane post office (zip 84117) where the envelope was handed in.

Although the taxpayer thus prevails on this appeal, we have to express astonishment that a law firm (Stoel Rives, LLP, of Salt Lake City) would wait until the last possible day and then mail an envelope without an official postmark. A petition for review is not a complicated document; it could have been mailed with time to spare. And if the last day turned out to be the only possible day (perhaps the firm was not engaged by the client until the time had almost run), why use a private postmark when an official one would have prevented any controversy? A member of the firm's staff could have walked the envelope to a post office and asked for hand cancellation. The regulation gives taxpayers another foolproof option by providing that the time stamp of a private delivery service, such as FedEx or UPS, is conclusive. 26 C.F.R. §301.7502–1(c)(3). Stoel Rives was taking an unnecessary risk with Tilden's money (and its own, in the malpractice claim sure to follow if we had agreed with the Tax Court) by waiting until the last day and then not getting an official postmark or using a delivery service.

The judgment of the Tax Court is reversed, and the case is remanded for a decision on the merits.