In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 16-3316

GERALD WINFIELD,

*Petitioner-Appellee,*

*v.*

STEPHANIE DORETHY, Warden,

*Respondent-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 4878 — **Sharon Johnson Coleman,** *Judge.*

———————————

ARGUED FEBRUARY 8, 2017 — DECIDED SEPTEMBER 13, 2017

———————————

Before WOOD, *Chief Judge,* FLAUM, *Circuit Judge,* and
CONLEY, *District Judge.*[*]

Conley, *District Judge.* On July 25, 2000, after a four-day
bench trial, Cook County Circuit Court Judge Leo E. Holt
found Gerald Winfield guilty of the attempted murder of Jar-

———————————

[*] Of the Western District of Wisconsin, sitting by designation.

lon Garrett. On direct appeal and again on post-conviction re-
view, the Illinois appellate courts rejected Winfield's chal-
lenges to his conviction and thirty-year prison sentence. By
agreement of the parties, a federal district court later re-
viewed Winfield's conviction under a less deferential stand-
ard than called for after the enactment of the Antiterrorism
and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.
§ 2254(d), and granted Winfield's petition for a writ of habeas
corpus. In a motion under Federal Rule of Civil Procedure
59(e), the state then sought to reverse its concession that the
pre-AEDPA standard applied, which the district court under-
standably denied as waived. Nevertheless, we are compelled
by AEDPA case law and principles of state comity to reverse
the district court's finding of waiver.


## I. Background

*A. Trial*

The state called two individuals who testified to witness-
ing the shooting of Jarlon Garrett and Dominick Stovall on
October 17, 1998. Stovall died of his wounds, but Garrett sur-
vived and also testified about his recollection of the events
that day.

Of these three eyewitnesses, the state trial judge found
that Lonnie Hartman was "[t]he only real credible witness."
Hartman testified that he was sitting in his own car when a
black car pulled up about thirty feet away from him, after
which a black male got out, began shooting at Garrett and
Stovall, then jumped back into the car and fled. According to
Hartman, the shooter was at least six feet tall and wore no

mask or anything else on his head. Still, Hartman could not identify Winfield as the shooter.

The second eyewitness, Lorenzo Curry, testified that from his vantage point on the porch of a nearby house, he saw Winfield and another, unidentified individual get out of a black car and begin shooting at Stovall and Garrett. Curry further offered a possible motive for the shooting, testifying that he was present at a dice game in August of 1998, along with Garrett, Stovall, Winfield and his younger brother, Terrance Winfield. During this game, Curry testified that an argument ensued after Terrance bumped Stovall, causing him to drop the dice and, Stovall claimed, unfairly affecting his roll. However, the trial judge found Curry's credibility "worthless" in light of "extensive impeachment." In particular, the judge found Curry's trial testimony inconsistent with his earlier grand jury testimony and statements to the police in several, material respects, including the number of shooters, whether he could identify the shooters and whether the shooters were wearing masks.

Finally, Garrett, the surviving victim, corroborated Curry's testimony about the dice game, testifying that Stovall and Winfield began arguing over whether Stovall could attempt his roll again. As for the shooting, Garrett testified that a black car pulled up beside Stovall and him, at which point Winfield emerged, pulled a mask over his face and began shooting at them. The trial judge found Garrett's credibility "not much better" than Curry's, since he did not identify Winfield as the shooter at "the earliest opportunity," including when Detective Kaizer and his partner interviewed Garrett while he was receiving treatment at the hospital.

Instead, Winfield became a suspect only after Curry and Garrett identified him as the shooter from a photo array. Following his arrest, Curry and Garrett also repeatedly identified Winfield in separate lineups. Winfield then gave an oral statement to Detective Kaizer around 10:00 p.m. on December 13, 1998.

Detective Kaizer then contacted Assistant State's Attorney Laura Forester, who prepared a written statement that Winfield signed at approximately 1:00 a.m. on December 14. The written statement, which was read into the record at trial, included a basic description of the events surrounding an argument at the dice game. Although Winfield reported that tensions had subsided within a week, the statement also reflected that members of Garrett's gang had beaten up his brother Terrance "a couple of weeks after the dice game." Moreover, the statement included Winfield's acknowledgement that he began to carry a gun in his waistband after Garrett shot at him "a couple of weeks" before the shooting on October 17, 1998.

As for the events on that date, the statement indicated that Winfield got into a black car carrying fellow gang members, and when he spotted Stovall and Garrett, he and another passenger in the car jumped out and began shooting at them. According to the statement, Winfield tried to re-enter the car, but because it sped away before he could get back in, he fled on foot and hid his gun under a bush, returning a few days later to retrieve and give it to a friend.

In contrast to his written statement, Winfield denied any involvement in the shooting at trial, claiming he signed it only after Detective Kaizer kicked him in the stomach and promised his release if he signed. Winfield also claimed that he did

not read the statement before signing it. The trial judge disbelieved this account as well, in part because Winfield appeared to be "an intelligent, articulate, thoughtful young man."

Despite inconsistencies regarding the shooter's height (Hartman testified that the shooter was at least six feet, while Winfield testified that he stands five feet and seven inches tall) and means of leaving the scene (Hartman testified that the shooter got back in the black car while Winfield's written statement says he fled on foot), as well as inconclusive forensic evidence with respect to the number of shooters, the trial judge relied principally on admissions in Winfield's signed statement in concluding that he shot at Garrett. Accordingly, although unable to decide whether there were one or two shooters, the trial judge found Winfield guilty of the attempted murder of Garrett, based on his written statement that he was carrying a gun because Garrett had shot at him earlier and the fact that Garrett had been shot. In contrast, the trial judge found Winfield not guilty of Stovall's murder, apparently because there was insufficient evidence that a bullet from Winfield's gun killed Stovall.

At Winfield's sentencing on August 18, 2000, the trial judge expressed doubt in the rehabilitative capacity of the Illinois Department of Corrections generally and in Winfield's potential for rehabilitation in particular, which he found was "somewhere between nil and zero." As a result, the judge ordered Winfield to serve thirty years in prison.

*B. Direct Appeal and Collateral Attacks*

On direct appeal, Winfield's new counsel raised a single challenge, claiming the trial judge abused his discretion by

neglecting to consider the potential for rehabilitation in arriv-
ing at Winfield's sentence. The appellate court rejected that
argument in light of the judge's statements that he was aware
of his obligation to consider Winfield's rehabilitative poten-
tial, even though he apparently discounted that element en-
tirely. The Illinois Supreme Court later denied Winfield's pe-
tition for leave to appeal that decision.

Some two months later, Winfield filed a *pro se* petition in
state court for post-conviction relief, arguing that his appel-
late counsel provided ineffective assistance on direct appeal
by failing to challenge the sufficiency of the evidence at trial.
After the appellate court denied Winfield's appeal from the
trial court's "inadvertent" dismissal of his petition, Winfield
retained counsel, who filed an amended petition presenting
two new grounds: "(1) his trial attorney was ineffective for
failing to call two alibi witnesses and (2) his appellate counsel
was ineffective for failing to raise the issue of his trial attor-
ney's incompetence." Following an evidentiary hearing at
which two of Winfield's alibi witnesses and his trial counsel
testified, the state court denied Winfield's petition based on
alternative findings that: (1) he did not inform counsel about
his alibi witnesses or (2) his counsel's decision to not call the
alibi witnesses was sound strategy. The appellate court af-
firmed, and the Illinois Supreme Court again denied Win-
field's petition for leave to appeal.

In his timely-filed, *pro se* petition for habeas relief to the
federal district court below, Winfield renewed his argument
that his state counsel rendered ineffective assistance by failing
to raise a sufficiency of the evidence challenge on direct ap-
peal. In answering the petition, the state not only agreed that
Winfield had presented his ineffective assistance challenge to

the Illinois courts timely, but conceded that those courts had not adjudicated his claim on the merits.

Some years later, the district court appointed counsel and permitted limited discovery on the process Winfield's state appellate counsel used to select issues for direct appeal. Winfield's appointed counsel then filed an additional brief in support of his habeas petition, arguing that appellate counsel should have challenged the sufficiency of the evidence supporting the attempted murder conviction under Illinois' corpus delicti rule.[1] In so arguing, this reply brief again specifically noted the state's agreement that the more lenient standard of review applied, something the state did not dispute in its surreply brief.

Proceeding on the parties' agreement that it was to "dispose of the matter as law and justice require," *Toliver v. Pollard*, 688 F.3d 853, 859 (7th Cir. 2012), rather than impose AEDPA's heightened burden, the district court granted Winfield's habeas petition and ordered the state to reopen his appeal. *United States ex rel. Winfield v. Acevedo*, 179 F. Supp. 3d 809 (N.D. Ill. 2016). Specifically, the district court held that appellate counsel's performance was deficient under the standard established in *Strickland v. Washington*, 466 U.S. 488 (1984), emphasizing counsel's failure to challenge whether independent evidence sufficiently corroborated Winfield's written statement. 179 F. Supp. 3d at 815-16. In response, the state moved to alter or amend the judgment under Federal Rule of Civil

---

[1] As a general principle, the "corpus delicti" of a crime is "proof—apart from the defendant's confessions or admissions—that a crime actually occurred." *United States v. Kerley*, 838 F.2d 932, 939 (7th Cir. 1988).

Procedure 59(e) and, in the alternative, for a stay of the order pending appeal.

Contrary to its previous position before the district court, the state's 59(e) motion asserted that the Illinois courts *had* considered the merits of Winfield's ineffective assistance claim, and thus argued for the first time that AEDPA's more stringent standard of review should apply. However, the district court refused to permit the state to "disavow its earlier position on the correct standard of review," relying on this Circuit's holding in *Havoco of America, Ltd. v. Sumitomo Corp. of America*, 974 F.2d 1332 (7th Cir. 1992), that Rule 59 is not the appropriate mechanism "to raise new arguments that could and should have been raised before judgment was entered." *Id.* at 1336.

Accordingly, the court rejected the state's motion for reconsideration based on its new argument that the post-conviction appellate court actually "addressed the merits of [the ineffective assistance claim] and its decision is therefore entitled to AEDPA deference." Given the "close call on the question of ineffective assistance of appellate counsel," the district court nevertheless granted a stay of its order pending appeal.

## II. Discussion

"Under § 2254(d), a habeas court must determine what arguments or theories supported or, … could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562

U.S. 86, 102 (2011). Given this deferential standard, the Supreme Court has referred to § 2254(d) as a "relitigation bar." *Id.* at 100; *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing § 2254(d) as a "difficult to meet" and "highly deferential" standard). With respect to the substance of Winfield's habeas petition, the Supreme Court has emphasized in particular that a defendant seeking federal collateral relief from a state conviction based on a defense counsel's allegedly deficient performance under § 2254(d) must prove that the state court's application of the *Strickland* standard was "*unreasonable*," not simply that counsel's performance fell short of *Strickland. Richter*, 562 U.S. at 101 (emphasis added); *see also Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (O'Connor, J., concurring) (emphasis in original). Consequently, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101; *see also Cullen*, 563 U.S. at 190 (describing the so-called "doubly deferential" review of counsel's performance under § 2254(d)). Finally, the Supreme Court instructs that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Johnson v. Williams*, 568 U.S. 289, 298 (2013) (alteration in original) (citing *Richter*, 562 U.S. at 99-100).

Despite this highly deferential standard of review, the district court found that defendant Winfield met his burden of proof, in part based on the state's concession that the Illinois courts had not reached the merits of defendant's claims. The

district court further found that the state was barred from rescinding this concession by post-judgment motion under Rule 59(e).

Unfortunately, neither side advised the court below of the general principle that waiver does not apply to arguments regarding the applicable standard of review. *See Worth v. Tyer*, 276 F.3d 249, 262 n.4 (7th Cir. 2001) (explaining in context of Title VII challenge that "the court, not the parties, must determine the standard of review, and therefore, it cannot be waived"). Seemingly acknowledging as much on appeal, Winfield now makes a more nuanced argument, asserting that the state did not merely concede (waive) any argument as to the proper standard of review, but rather conceded (forfeited) an underlying question of fact that determined the applicable standard. In an even more tortured version of this argument, Winfield further maintains that because the *Johnson* Court refused to recognize an "irrebuttable" presumption that the state courts adjudicated a habeas petitioner's federal claim on the merits, 568 U.S. at 301-02, whether the § 2254(d) standard applies "is a factual matter, which means that the parties can agree or not agree on that fact."

Frankly, the line that Winfield would have this court divine between a question of fact and law in assessing the application of AEDPA's review standard is indiscernibly thin, especially since the actions of the state courts essentially speak for themselves, rather than depend upon characterizations by the state's prosecuting arm. In support of Winfield's argument attempting to draw a nuanced distinction between waiver of the appropriate standard of review, which he now concedes is prohibited, and estoppel regarding a position on a factual issue, which he argues only "implicat[es] … the

standard of review," Winfield offered a recent, supplemental authority shortly before oral argument. However, the decision in *Tilden v. Commissioner of Internal Revenue*, 846 F.3d 882 (7th Cir. 2017), affords little support for Winfield's position here. In *Tilden*, the petitioner had moved for reconsideration of a U.S. Tax Court's dismissal of his petition as untimely, and the IRS agreed that the petition was filed timely.[2] 846 F.3d at 885-86. This court was, therefore, confronted with the question of whether the Tax Court had erred in dismissing as untimely a petition for review of a notice of tax deficiency, which that court did despite the parties' agreement otherwise.

In holding the dismissal improper, the *Tilden* court explained that although "litigants cannot stipulate to jurisdiction," they can "agree on the *facts* that determine jurisdiction." *Id.* at 887 (emphasis in original). By way of example, the court explained that a district court need not scrutinize the parties' agreement regarding the facts supporting diversity jurisdiction, unless it has reason to suspect collusion. *Id.* However, the *Tilden* court determined that reversal of the Tax Court's judgment dismissing the petition was required not because that court had ignored the assertion of the IRS regarding a fact that would determine whether the filing was timely, but instead because the Tax Court had reached the wrong legal conclusion as to the applicable subsection of the controlling regulation. *Id.* Accordingly, *Tilden* does not support upholding waiver of the legally applicable standard of review under § 2254(d).

---

[2] This actually represented a retreat from the IRS's earlier position regarding the appropriate regulation under which to review timeliness.

Winfield supplemented the record with another of this court's decisions, although not nearly so recent. That supplemental authority was provided just a day before oral argument, and is more directly on point, but still lacks sufficient persuasive force to carry his estoppel argument on appeal. In *Watkins v. Meloy*, 94 F.3d 4 (7th Cir. 1996), decided mere months after AEDPA was enacted, this court permitted the state to "expressly waive[] reliance" on the statute, observing that "[t]he provisions of the new Act governing the scope of federal judicial review do not affect the subject-matter jurisdiction of the federal courts, and are therefore waivable." *Id.* at 6 (citing *Emerson v. Gramley*, 91 F.3d 898, 899-900 (7th Cir. 1996)). Accordingly, *Watkins* did not address (nor did *Emerson*) whether a party is precluded from changing its position regarding application of the § 2254(d) standard. Nor should that early statement regarding waiver be deemed controlling precedent, not just because the statute's ink was not yet dry, but because the Supreme Court and even the circuit courts had not yet had occasion to interpret AEDPA in any meaningful, substantive way. As importantly, both *Watkins* and *Emerson* were decided when it was still unclear whether AEDPA's deferential standard was intended to apply to habeas petitions filed before its enactment.[3] *See Johnson v. Washington*, 119

---

[3] At least two circuit courts, both of which later held that the appropriate standard of review is *non*-waivable, found waiver in the year after AEDPA's enactment. *See Arnold v. Evatt*, 113 F.3d 1352, 1362 n.57 (4th Cir. 1997) ("Although the new § 2254(d) may affect additional claims raised by Arnold, the state has not asked us to consider its possible bearing on any other claims, and we consider the issue waived."); *Miles v. Stainer*, 108 F.3d 1109, 1112 n.2 (9th Cir. 1997) ("The state does not discuss whether the 'new' standard of review for habeas petitions contained in 28 U.S.C. § 2254(d) should apply to this case. We therefore deem the issue waived.").

F.3d 513, 521 n.5 (7th Cir. 1997) ("We are aware that the United States Supreme Court has recently decided that the new provisions … in 28 U.S.C. § 2254(d) … are not applied retroactively to pending cases. Our analysis, therefore, is under the old *de novo* standard of review.") (citation omitted).

Ultimately, drawing a fine line, even if discernable, between waiver of the § 2254(d) standard of review and estoppel of an underlying fact that determines whether that standard must apply–as Winfield would have us attempt here–also runs headlong into the principles of comity and finality, both of which, the Supreme Court has reiterated, are central reasons why state court decisions are afforded significant deference under AEDPA. As framed by Justice Kennedy, the § 2254(d) standard is designed both to vindicate "the State's significant interest in repose for concluded litigation," as well as to ensure that "state courts are the principal forum for asserting constitutional challenges to state convictions." *Richter*, 562 U.S. at 103 (quoting *Harris v. Reed*, 489 U.S. 255, 282 (1989) (Kennedy, J., dissenting)); *see also Williams v. Taylor*, 529 U.S. 420, 436 (2000) ("There is no doubt Congress intended AEDPA to advance these doctrines [of comity, finality and federalism]."). Indeed, the standard "is difficult to meet, [and] that is because it was meant to be." *Richter*, 562 U.S. at 102; *see also Felker v. Turpin*, 518 U.S. 651, 654 (1996) (acknowledging that AEDPA "work[ed] substantial changes" to federal habeas law).

Not surprisingly, these doctrines repeatedly animate the Supreme Court's habeas jurisprudence. For example, the § 2254 requirement that a prisoner exhausts all available state remedies before raising a claim in a federal habeas petition is "founded on concerns broader than those of the parties,"

namely, "foster[ing] respectful, harmonious relations between the state and federal judiciaries." *Wood v. Milyard*, 566 U.S. 463, 132 S. Ct. 1826, 1833 (2012) (citing *Granberry v. Greer*, 481 U.S. 129, 132-35 (1987)). Similarly, in *Granberry*, while reiterating the Court's "reluctance to adopt rules that allow a party to withhold raising a defense until after the 'main event,'" 481 U.S. at 132, it nevertheless held that in "exceptional cases," federal circuit courts may "consider a nonexhaustion argument 'inadverten[tly]' overlooked by the State in the District Court," *Milyard*, 132 S. Ct. at 1833 (alteration in original).[4] In the same vein, federal courts are empowered to raise sua sponte an unnoticed or misapplied (though not an intelligently-waived) habeas statute of limitations defense, since the "statute of limitations, like the exhaustion doctrine, 'implicat[es] values beyond the concerns of the parties.'" *Id.* (alteration in original) (quoting *Day v. McDonough*, 547 U.S. 198, 209 (2006)); *see also Long v. Wilson*, 393 F.3d 390, 404 (3d Cir. 2004) ("AEDPA's statute of limitations advances the same concerns as those advanced by the doctrines of exhaustion and procedural default, and must be treated the same.").

That said, there are limits to a federal court's discretion to consider AEDPA defenses that the state did not advance timely. For example, in *Milyard*, the Supreme Court held that the Tenth Circuit abused its discretion by affirming the denial of a habeas petition solely on untimeliness grounds when the state had knowingly declined to raise a timeliness challenge

---

[4] After *Granberry* was decided, Congress explicitly adopted the same rule in AEDPA. See 22 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance on the requirement unless the State, through counsel, expressly waives the requirement.").

and, thus, "deliberately steered the District Court away from the question and towards the merits of Wood's petition."[5] 132 S. Ct. at 1835. Moreover, in *Brumfield v. Cain*, 576 U.S. ___ (2015), the Court "deemed waived" the state's argument that the "arguably more deferential standard set out in § 2254(e)(1) … . supplies the governing standard when a court evaluates whether a habeas petitioner has satisfied § 2254(d)'s requirements," since that argument had not been raised below, nor in sufficiently specific terms in opposition to certiorari.[6] *Id.* at 2282.

Here, the state's original agreement that a pre-AEDPA standard of review applied in responding to Winfield's § 2254 petition, as well as its failure to correct that concession in its surreply does not, without more, necessarily amount to an "intentional relinquishment or abandonment of a known

---

[5] In *Milyard*, the state twice indicated to the district court that although it was aware that a viable timeliness defense was available, it was not challenging the petition on those grounds. 132 S. Ct. at 1834. This is in contrast to *Day*, in which the Court affirmed the dismissal of a habeas petition on statute of limitations grounds at least in part because the record indicated that the state's failure to raise the defense was not a strategic maneuver, but merely the result of a mistaken calculation. 547 U.S. at 210-11. Indeed, the Court noted explicitly in *Milyard* that the distinction between a defense that is "waived," meaning "knowingly and intentionally relinquished," and "forfeited," or "one that a party has merely failed to preserve," was "key to [its] decision in [that] case." 132 S. Ct. at 1832 n.4.

[6] 28 U.S.C. § 2254(e)(1) provides that: "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

right," at least in contrast to a state's clear, repeated waiver of its untimeliness defense, as in *Milyard*. 132 S. Ct. 1835. Regardless, although waiver may be appropriate for some defenses or arguments available under AEDPA–such as the statute of limitations or whether § 2254(e)(1)'s standard applies to a § 2254(d) analysis–the same is not true for others, including the § 2254(d) deferential standard of review.

In *Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003), the Second Circuit confronted a similar habeas petitioner's argument that the state waived § 2254(d) review by "failing to reference the standard" before the district court. *Id.* at 120-21. In rejecting that argument, the Second Circuit explained that "AEDPA's standard of review … is not a procedural defense, but a standard of general applicability for all petitions filed by state prisoners after the statute's effective date presenting claims that have been adjudicated on the merits by a state court." *Id.* at 121; *see also Thompson v. Runnels*, 705 F.3d 1089, 1099 (9th Cir. 2013) (distinguishing the Supreme Court's holding regarding deliberate waiver of the habeas statute of limitations defense in *Milyard* as "not applicable to [the] consideration of the correct interpretation of § 2254(d)(1), which is not an affirmative defense"). Accordingly, the Second Circuit held in *Eze* that deference must be afforded if the state court adjudicated the merits of the federal claim given § 2254(d)'s "unequivocally mandatory language," notwithstanding the state's failure to advocate for its application in the district court below. 321 F.3d at 121.

Several other circuit courts have expressed agreement with the notion that the standard of review under § 2254(d) is not waivable. *See Ward v. Stephens*, 777 F.3d 250, 257 n.3 (5th Cir. 2015) ("We are therefore obligated to decide whether

Ward exhausted this claim such that § 2254's deferential standard applies, regardless of the parties' position on the matter."); *Amado v. Gonzalez*, 758 F.3d 1119, 1133 n.9 (9th Cir. 2014) ("We note that neither party addressed the issue of the proper standard by which we are to review Amado's habeas claim. Nevertheless, we have the obligation to apply the correct standard, for the issue is non-waivable."); *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1282 n.3 (11th Cir. 2012) ("As the Fourth Circuit has held, 'Congress clearly intended the standard of review of the AEDPA to apply to *habeas* petitions filed after its enactment, … and we will not hold that the appropriate standard of review is waived just because the parties did not realize what that standard was.'") (alteration in original) (quoting *Diaz v. Moore*, Nos. 97-6586, 97-6604, 1998 WL 112526, at *2 n.6 (4th Cir. Mar. 16, 1998)); *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009) ("We agree with our sibling circuits that the correct standard of review under AEDPA is not waivable. It is, unlike exhaustion, an unavoidable legal question we must ask, and answer, in every case."); *see also Moritz v. Lafler*, 2013 WL 1777127, 525 F. App'x 277, 285 (6th Cir. Apr. 25, 2013) (unpublished) ("[T]his circuit has expressly held, in the context of determining whether the AEDPA § 2254(d) standard of review applied, 'that a party cannot 'waive' the proper standard of review by failing to argue it.") (citing *Brown v. Smith*, 551 F.3d 424, 428 n.2 (6th Cir. 2008), *abrogated on other grounds by Cullen*, 563 U.S. 170); *Moss v. Ballard*, 537 F. App'x 191, 195 n.2 (4th Cir. 2013) (rejecting the state's argument that the habeas petitioner waived the application of *de novo* review because he failed to seek it before the district court, since "the correct standard of review under AEDPA is not waivable") (citations omitted).

The Tenth Circuit has at least suggested that the state's reason for failing to assert AEDPA deference should be wholly immaterial if § 2254(d) supplies the applicable standard. *See Gardner*, 586 F.3d at 879 ("It is one thing to allow parties to forfeit claims, defenses, or lines of argument; it would be quite another to allow parties to stipulate or bind us to application of an incorrect legal standard, contrary to the congressional purpose."). Of course, gamesmanship is a real possibility when parties are permitted to raise arguments late or walk back concessions after the district court has issued a considered ruling. *See Granberry*, 481 U.S. at 132-33 (remarking that an unfortunate consequence of adopting the "middle course" between requiring dismissal for nonexhaustion notwithstanding the state's failure to raise it and treating that failure as an absolute waiver is that the state may be encouraged to "seek a favorable ruling on the merits in the district court while holding the exhaustion defense in reserve for use on appeal if necessary"); *Ward*, 777 F.3d at 257 n.3 (noting the possibility that a habeas petitioner may have "strategically conceded his IAC claim was unexhausted to obtain de novo review and funding to investigate" in the federal courts); Andrew L. Adler, *The Non-Waivability of AEDPA Deference's Applicability*, 67 U. Miami L. Rev. 767, 777 n.54 (2013) (a state may wish to waive § 2254(d) deference in hopes of creating favorable precedent with respect to an underlying constitutional issue). However vexing this may be to lower courts, and certainly worth discouraging by such measures as sanctions against the offending lawyer or litigant, it is not evident that the problem of gamesmanship is a more substantial one than the disruption of comity and finality that could result from finding waiver or forfeiture of AEDPA's deferential standard of review, which, as already discussed, has plainly driven case

law almost universally finding the standard cannot be waived. Regardless, Winfield does not make this argument, nor identify any reason to think that such strategic maneuvering was the more likely cause of the state's behavior here than an inadvertent mistake.

While Winfield attempts to distinguish some of the many adverse decisions on this issue across the country as not involving an identical, factual scenario, because the state initially agreed at the district court level here that AEDPA's deferential standard did not apply, he ultimately offers no meaningful response to the decisions of other circuit courts to date, all of which have flatly held the standard cannot be waived. Without pre-judging the outcome, therefore, we REVERSE and REMAND to the district court for further proceedings consistent with this decision.