In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-3253

DAVID MINNICK,

*Petitioner-Appellant,*

*v.*

DAN WINKLESKI, Warden,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 19-CV-33 — **William E. Duffin**, *Magistrate Judge.*

———————————

ARGUED MAY 12, 2021— DECIDED SEPTEMBER 21, 2021

———————————

Before FLAUM, HAMILTON, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* David Minnick pleaded no contest in Wisconsin state court to several crimes that resulted from a violent confrontation involving his then-wife. He received sentences totaling 27 years of initial confinement. Since then, Minnick has brought a series of unsuccessful challenges to his convictions in state and federal courts.

The district court denied Minnick's request for federal habeas relief under 28 U.S.C. § 2254. That court decided that Minnick's trial counsel was not ineffective for advising him that a term of not more than ten years of initial confinement was likely. The court also ruled that Minnick did not show that any reasonable trial counsel would have advised him of the possibility of withdrawing his no contest pleas before sentencing. So not offering that argument did not deny Minnick the right to effective postconviction counsel.

Although Minnick's claims could have been analyzed differently—including whether the state court's decision on his trial counsel's sentencing advice warranted deference under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254—the correct result was reached. We affirm the denial of habeas relief.

**I**

When David Minnick's wife told him she was leaving him for another man, Minnick retrieved a rifle and struck her in the head. She fled to her parents' house across the street, and Minnick followed, firing several shots. He tried to break down the door of his in-laws' house, broke windows, and shot inside the house, grazing his father-in-law. As a result, Minnick was charged in Kenosha County Circuit Court with aggravated battery, attempted first-degree murder, and several counts of first-degree reckless endangerment and attempted burglary, all while using a dangerous weapon.

Minnick initially pleaded not guilty by reason of mental disease or defect, arguing that his actions were rooted in the post-traumatic stress disorder from which he suffers. He later withdrew that plea and agreed to plead no contest to the

crimes (except for the attempted murder charge, which was dismissed and read-in) and leave sentencing up to the court. This exposed Minnick to 73 years of initial confinement.[1] The presentence investigation report recommended Minnick receive between 16 and 22½ years of initial confinement. At the sentencing hearing, the state asked for 45 years of initial confinement, and Minnick's trial counsel, Laura Walker, asked for 4 years. The trial court sentenced Minnick to 27 years of initial confinement followed by 14 years of extended supervision.

Minnick appealed that sentence, arguing (by his postconviction counsel Michael Zell) that he should be able to withdraw his no contest pleas because he received ineffective assistance of counsel. An attorney is constitutionally ineffective if she performs deficiently and this performance prejudices her client. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Minnick argued Walker met this standard because she improperly guaranteed and unreasonably estimated that he would receive a much shorter sentence.

The state trial court held a hearing at which Minnick and Walker testified.[2] The court found Walker credible that she did not guarantee Minnick a certain sentence length, and that

---

[1] Under Wisconsin's determinate criminal sentencing structure, a bifurcated sentence consists of an initial term of confinement in prison followed by a term of extended supervision in the community. *See* Wis. Stat. 973.01(2); Thomas J. Hammer, *The Long and Arduous Journey to Truth-in-Sentencing in Wisconsin*, 15 FED. SENT'G REP. 15 (2002).

[2] In Wisconsin's postconviction process, an offender's initial step in challenging a sentence is a postconviction motion filed under Wis. Stat. § 974.02, which allows the trial court the first opportunity to consider certain challenges. *See Page v. Frank*, 343 F.3d 901, 905–06 (7th Cir. 2003).

Minnick knew Walker provided only an estimate. At the hearing, a friend of Minnick's also testified he had spoken with Walker, who asked the friend to convince Minnick to take the plea. Walker responded in her testimony that Minnick knew his sentence was ultimately up to the judge and that she always qualified her statements to Minnick about the length of his sentence by emphasizing that her estimate was not a guarantee. The state court ruled against Minnick and declined to let him withdraw his no contest pleas.

The Wisconsin Court of Appeals affirmed this decision in 2015. That court ruled: "Minnick has shown no more than that counsel predicted an outcome that did not come to pass. Her misjudgment of the likely sentence is not a basis for an ineffective assistance of counsel claim, … ." The Wisconsin Supreme Court and the Supreme Court of the United States denied review.

Minnick then filed a collateral attack in state court under Wis. Stat. § 974.06, alleging that Walker was constitutionally ineffective because she failed to advise him that he could withdraw his no contest pleas before sentencing if he provided a "fair and just reason." Because Minnick had not raised this claim in his first appeal, he argued the state court could consider it because his postconviction counsel Zell was constitutionally ineffective for not raising it. When Walker learned that the presentence investigation report recommended a sentencing range exceeding what she had advised, Minnick argued, she should have informed him that he could have moved to withdraw his no contest pleas.[3]

---

[3] Under Wisconsin law, a presentencing plea withdrawal motion is considered under a "fair and just reason" standard, *State v. Jenkins*, 736

For habeas petitioners who allege they received ineffective assistance of postconviction counsel because an issue was not raised, Wisconsin employs a "clearly stronger" standard to evaluate counsel's performance under *Strickland*. *See State v. Romero-Georgana*, 849 N.W.2d 668, 672, 679 (Wis. 2014) (citing *State v. Starks*, 833 N.W.2d 146 (Wis. 2013)). Under that standard, "the defendant must show that a particular nonfrivolous issue was *clearly stronger* than issues that counsel did present." *Starks*, 833 N.W.2d at 163 (internal quotation marks omitted).

The state court held a hearing on Minnick's motion. Zell testified that the claim he raised about Walker's sentence estimate was stronger than arguing Walker was ineffective for not advising Minnick about presentence plea withdrawal. Zell explained that witnesses could testify about Walker's advice to Minnick about the likely sentence. In contrast, given the record, Zell had concerns that a plea withdrawal motion was not well-founded. The state court agreed and denied this motion.

In 2018 Minnick appealed that denial to the Wisconsin Court of Appeals. That court noted how Minnick's appeal was premised on the same scenario it had rejected three years earlier that Walker's misjudgment of a likely sentence was a basis for an ineffective assistance of counsel claim. The appeals court concluded that Zell had not performed deficiently, ruling that the plea withdrawal argument was not clearly stronger than the argument Zell offered. Zell was aware of the law underlying a plea withdrawal motion, and more factors favored the claim Zell made that Walker had misled Minnick

_____

N.W.2d 24, 33 (Wis. 2007), while such a motion made after sentencing plea is evaluated under a "manifest injustice" standard. *State v. Negrete*, 819 N.W.2d 749, 755 (Wis. 2012).

concerning his possible sentence than supported an ineffectiveness claim that Walker failed to counsel Minnick to withdraw his pleas before sentencing. Minnick also was not prejudiced, the appeals court ruled, because sentencing was at the discretion of the trial judge and the presentence investigation report did not alter that. The Wisconsin Supreme Court denied review of Minnick's collateral attack.

Minnick then filed this federal habeas corpus petition under 28 U.S.C. § 2254. His petition alleged:

1.  Walker was ineffective for saying that if Minnick accepted the plea deal, he would receive only ten years of initial confinement;

2.  Walker was ineffective for not advising Minnick that he could withdraw his plea before sentencing; and

3.  Zell was ineffective for not making the plea withdrawal argument in Minnick's first appeal.

On the first claim, the district court concluded that Minnick did not make this argument in the state court of appeals, so it could be considered only because the state conceded that Minnick met the exhaustion requirement for habeas petitions. This led the district court to conclude that the Wisconsin Court of Appeals had not adjudicated the first claim on the merits, and that as a result, its decision was not entitled to deference under AEDPA. Even under de novo review, though, the district court denied the first claim because Walker had not shown bad faith, her estimate was not inconsistent with other cases, and there was no suggestion that her estimate was a gross misjudgment.

The district court reviewed the second claim through the lens of ineffective assistance of appellate counsel. But, inscrutably, that court determined the government had waived any argument that Minnick had procedurally defaulted this second claim. So the district court essentially analyzed Minnick's second and third claims together. On these claims, the district court concluded that AEDPA deference applied because the Wisconsin Court of Appeals adjudicated the ineffective assistance of postconviction counsel claim on the merits. According to the district court, Minnick could not have been prejudiced by postconviction counsel's failure because Minnick could not show he would have moved to withdraw his pleas, or that he would have succeeded in withdrawing his plea if he had been advised to do so.

So the district court denied Minnick's petition, but it issued a certificate of appealability on two issues: whether Minnick was denied effective assistance of counsel based on Walker's sentence estimate, and by Zell's failure to make the plea withdrawal argument.

## II

We first examine whether Minnick is entitled to habeas relief for his claim that his trial counsel Walker was constitutionally ineffective when she told Minnick he was "likely" to receive no more than ten years of initial confinement. The district court answered this question in the negative. We review that determination, as we do all the district court's decisions on Minnick's petition, de novo. *Maier v. Smith*, 912 F.3d 1064, 1069 (7th Cir. 2019).

## A

On this first claim, the district court concluded that the deferential standard of AEDPA does not apply. A threshold question is whether that decision is correct. AEDPA deference applies only to claims in habeas petitions that were adjudicated on the merits in state court. *Adorno v. Melvin*, 876 F.3d 917, 921 (7th Cir. 2017). We presume a state court adjudicated a claim on the merits unless the state court relied wholly on state law grounds for its decision or expressly declined to consider the claim. *Winfield v. Dorethy*, 871 F.3d 555, 560 (7th Cir. 2017).

The district court construed Minnick's claim in the state court that he was "guaranteed" a certain sentence as different from his first claim here that Walker's advice as to the likely sentence constituted ineffective assistance. If Minnick's claim was not presented to the state court—as the district court believed—it could not have been adjudicated on the merits, as required for AEDPA deference. *Winfield*, 871 F.3d at 560. Generally, a claim not raised in the state appellate court would be an unexhausted claim that a district court could not consider on collateral review. *See* 28 U.S.C. § 2254. But according to the district court, because the state conceded that there was no exhaustion issue, the district court had to consider this claim so it conducted de novo review.

We do not agree with the district court that the Wisconsin Court of Appeals did not adjudicate Minnick's first claim on the merits. The state appeals court not only concluded that Walker did not make a guarantee to Minnick about the length of his sentence, but it expressly ruled that Walker's misjudgment of the likely sentence was not ineffective assistance of counsel. For the purpose of habeas review, there is no functional distinction between Minnick complaining about a

"guarantee" and about "advice." Walker offered her opinion about what sentence Minnick would receive. However her opinion is characterized—a "guarantee," a "likely outcome," an "estimate," or a "prediction"—it was her counsel to Minnick, which the Wisconsin Court of Appeals ruled was not ineffective.

The state appeals court did not rely wholly on state law grounds for its decision or expressly decline to consider the claim, so the presumption of adjudication on the merits controls. We conclude that AEDPA deference applies to the Wisconsin Court of Appeals' resolution on Minnick's first claim.

**B**

Resolving this threshold question leads us to recall what AEDPA deference means. Minnick's appeal comes to us as a collateral attack on a state court judgment. Under AEDPA's strict standard of review, federal courts defer to state court decisions. By its text, AEDPA precludes a federal court from granting a state prisoner's habeas petition unless the state court's merits adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphases added). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). This standard is "difficult to meet and highly deferential." *Makiel v. Butler*, 782 F.3d 882, 896 (7th Cir. 2015) (internal quotation marks omitted). Relief is precluded "so long as fairminded jurists could disagree

on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted).

AEDPA's strictness is grounded in comity. "AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). "AEDPA's requirements reflect a 'presumption that state courts know and follow the law.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316. This is particularly true when state courts adjudicate ineffective assistance of counsel claims. *Titlow*, 571 U.S. at 19.

For an ineffective assistance of counsel claim such as this, "[t]he federal courts as a whole engage in 'doubly deferential' review" under AEDPA. *Wilborn v. Jones*, 964 F.3d 618, 620 (7th Cir. 2020) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Deference is layered upon deference in these cases because federal courts must give "both the state court and the defense attorney the benefit of the doubt." *Titlow*, 571 U.S. at 15. Even without AEDPA, ineffective assistance of counsel claims remain difficult to prove, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "That hill is even steeper" for claims governed by AEDPA. *Myers v. Neal*, 975 F.3d 611, 620 (7th Cir. 2020).

A claim for constitutionally ineffective assistance of counsel during the plea process is governed by the *Strickland* standard. *See Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012). To be deficient, counsel's performance must be unreasonable such that "counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687 (internal quotation marks omitted). In the plea-bargaining context, the prejudice prong is satisfied if "there is a reasonable probability that, but for counsel's errors, the [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Lafler* 566 U.S. at 163 (internal quotation marks omitted). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* 466 U.S. at 689.

## C

A petitioner's habeas claim is considered against the last reasoned state court decision on the merits. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Makiel* 782 F.3d at 896. For this first claim, that is the 2015 decision of the Wisconsin Court of Appeals on direct appeal. That court rested its analysis on the deficient performance prong of *Strickland*, so we confine our analysis to that prong.

Minnick argues that by applying a categorical rule, the reasoning of the Wisconsin Court of Appeals was contrary to *Strickland*. According to Minnick, this rule was that an attorney's sentence miscalculations could never result in constitutionally deficient performance. True, the Supreme Court has instructed that *Strickland* requires a "circumstance-specific reasonableness inquiry," *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). But the reasoning of the Wisconsin Court of Appeals was very similar to the standard this court has applied in

analogous cases, and which we do not read as a categorical rule. This court has stated that "a mistaken prediction is not enough in itself to show deficient performance" because "the sentencing consequences of guilty pleas (or, for that matter, guilty verdicts) are extraordinarily difficult to predict." *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996); *see also Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) ("[C]ounsel's alleged miscalculation, standing alone, could never suffice to demonstrate deficient performance unless the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles."). Still, a miscalculation might constitute deficient performance if it is a gross miscalculation and there is evidence of the attorney's bad faith. *Id.*; *see also United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999).

In its 2015 opinion, the Wisconsin appeals court did not include the phrases "in itself" or "standing alone." Even so, its decision can reasonably be interpreted as describing a similar standard. Nothing in Minnick's case required the state appeals court to explain that a miscalculation might be grounds for deficient performance if there was evidence of bad faith. Further, Minnick did not present any evidence—besides the incorrectly estimated sentence—to suggest that Walker performed deficiently.

The Wisconsin Court of Appeals determined that Minnick knew at sentencing that the state court could impose the maximum sentences, as well as that the term of initial confinement which Walker opined Minnick would receive was not a guarantee. Minnick cites Walker's newness to legal practice (two years of experience when she represented Minnick) and the difference between the initial confinement term she estimated

and the range in the presentence investigation report (10 years versus 16–22½ years) and contends Walker acted unreasonably in her prediction. But Walker had worked on hundreds of criminal cases before Minnick's, including shooting cases, and the federal district court provided examples of cases in which defendants facing similar charges to Minnick's received sentences that were within the range that Walker predicted. And the state court did not conclude or suggest facts that showed bad faith on Walker's part in making her prediction. Even more, Walker gave reasons for her prediction in the state court. She believed that because Minnick had no criminal record, was 45 years of age, and was a military veteran that he would receive a sentence far less severe than the maximum.

Although Supreme Court decisions provide the relevant lodestar for cases under AEDPA review, if a state court's reasoning largely follows circuit precedent, that is persuasive evidence the state court did not improperly apply the Supreme Court caselaw. *See Thill v. Richardson*, 996 F.3d 469, 477 (7th Cir. 2021) ("This ambiguity is not enough to demonstrate that the court applied a standard contrary to clearly established federal law.") (internal quotation marks omitted). Because the Wisconsin Court of Appeals' resolution of this case was consistent with this court's precedent, its decision was not contrary to, or an unreasonable application of *Strickland*. What is more, that a sentence miscalculation is not enough by itself to demonstrate deficient performance is consistent with *Strickland*'s presumption of deference to attorneys.

The state appeals court did not unreasonably apply *Strickland* when it concluded that Walker's misjudgment of Minnick's likely sentence length, without more, could not

establish deficient performance. Under AEDPA, that decision is due deference. So relief is not available to Minnick on his first claim.

## III

### A

The district court handled Minnick's second and third claims in tandem. Because the Wisconsin Court of Appeals viewed Minnick's second claim against Walker through the prism of his third claim for ineffective assistance of postconviction counsel, the district court reasoned that it must do so as well. Yet, incongruously, the district court also rejected the argument that Minnick's second claim against Walker was procedurally defaulted, concluding that the government had waived that argument by failing to mention it in its opening brief. That reasoning is contradictory. If Minnick's second claim was not procedurally defaulted, the question is whether the Wisconsin Court Appeals adjudicated that claim on the merits. If, however, this second claim was procedurally defaulted, then only Minnick's third claim for ineffective assistance of postconviction counsel would remain. What cannot be true is that Minnick both did not procedurally default his second claim and that we view it only in the context of his third claim.

We address this contradiction by examining only Minnick's third claim for ineffective assistance of postconviction counsel. Although this is what the district court did as well, we do so for different reasons. The third claim is included in the certificate of appealability, our charge for this appeal. In addition, although the district court concluded that the government waived the procedural default argument, that court

essentially treated Minnick's second claim—that Walker was ineffective for not advising Minnick that he could withdraw his plea before sentencing—as procedurally defaulted by not viewing the claim on its own terms and by granting the certificate of appealability on the third claim. The parties also appear to treat the second claim as procedurally defaulted, and they focus their arguments on the third claim. So we turn to the merits of that third claim.

**B**

Minnick's claim of ineffective assistance of postconviction counsel is also subject to the double deference of *Strickland* and AEDPA. *See Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013) (*Strickland* standard governs ineffective assistance of appellate counsel). Initially, Minnick argues that the Wisconsin Court of Appeals applied the wrong standard when it limited its deficiency inquiry to whether the claim Zell failed to press was clearly stronger than the argument he raised. Per Minnick, that standard applies only to postconviction counsel's intentional decisions, not oversight, which Minnick submits was the case here based on Zell's testimony.

Nevertheless, the Supreme Court and this court employ that same standard. *See Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) ("Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."); *Ramirez v. Tegels*, 963 F.3d 604, 613 (7th Cir. 2020) (noting that if an attorney "abandoned a nonfrivolous claim that was both 'obvious' and 'clearly stronger' than the claim[s] that [s]he actually presented, [her] performance was deficient, unless [her] choice had a strategic justification"); *Makiel*, 782 F.3d at 898. These authorities do not admit of the distinction Minnick

advances between intent and negligence in postconviction counsel's decision making. *See id.* (at evidentiary hearing appellate counsel "testified that she could not remember specifically considering and rejecting these issues.") (internal quotation marks omitted). As the district court recognized, the clearly stronger standard does not impermissibly add to the *Strickland* test, but instead applies the deficiency prong in the appellate context where counsel is encouraged to winnow the issues selected for appeal. By applying the clearly stronger standard, the Wisconsin Court of Appeals did not apply a test that was contrary to clearly established law. Because the state appeals court properly applied this standard, we limit our analysis to the deficient performance prong of the *Strickland* evaluation.

"[P]roving that an unraised claim is clearly stronger than a claim that was raised is generally difficult 'because the comparative strength of two claims is usually debatable.'" *Makiel*, 782 F.3d at 898. The Wisconsin Court of Appeals concluded that the unraised plea withdrawal claim was not clearly stronger than the challenge to Walker's advice on Minnick's likely sentence, giving two reasons. The first was its evaluation of the underlying claim on Walker's sentencing advice. The second was Zell's understanding that Minnick would have difficulty showing he had a "fair and just reason" for withdrawing his plea before sentencing. *See State v. Jenkins*, 736 N.W.2d 24, 33 (Wis. 2007) (applying "fair and just reason" standard to plea withdrawals before sentencing). Under Zell's reasoning, Walker did not perform deficiently in failing to advise Minnick to file such a motion. To the contrary, Minnick would simply be expressing a desire to go to trial, which Wisconsin precedent says does not qualify as such a fair and just reason. *See State v. Garcia*, 532 N.W.2d 111, 117 (Wis. 1995) ("A

fair and just reason is some adequate reason for defendant's change of heart … other than the desire to have a trial.") (internal quotation marks omitted).

Minnick does not directly confront either of these reasons. Rather, he contends his case is akin to those in which counsel fail to consult their criminal defense client about the possibility of taking an appeal. But in those decisions, the strength of the underlying claim is not the main consideration; instead "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480.

We are not persuaded by Minnick's analogy to an attorney failing to enter a notice of appeal. There, the proceedings end if the defendant does not take an appeal; nothing is left for the trial court to do. Here, the only change in circumstances Minnick suggests should have triggered Walker's duty to advise him to withdraw his pleas was the distribution of the presentence investigation report. But such a report does not bind the sentencing court. Everyone knew the latitude at sentencing afforded to the prosecution—and, more importantly, to the court—and Minnick confirmed this when he entered his no contest pleas. Moreover, in instances too numerous to count, a presentence investigation report recommends a sentence longer than the term the sentencing court imposes. Under Minnick's argument, if a presentence investigation report or the possibility of a lengthy sentence is sufficient basis to withdraw a plea, that would invite substantial gamesmanship.

Minnick also argues that the unraised plea withdrawal claim was clearly stronger than Zell's challenge to Walker's advice on Minnick's likely sentence because a presentencing plea withdrawal motion is reviewed under a more deferential standard than if made after sentencing. But just because the standards differ based on the timing of the motion does not suggest which ineffective assistance of counsel claim is stronger. What matters is whether Walker, when the motion had to be made, acted reasonably in not advising Minnick to make it. As noted above, there are reasons to conclude Walker acted within the scope of competent counsel in not advising Minnick to so move.

It is not clear that any presentence plea withdrawal motion that Minnick made would have succeeded. At most, it is debatable whether such a motion is clearly stronger than the sentencing advice argument Zell advanced. This case is not like *Shaw*, in which an essentially frivolous sufficiency-of-the-evidence claim was raised, rather than counsel pressing a potentially meritorious statutory claim. *Shaw*, 721 F.3d at 915. The state appeals court could reasonably conclude that Walker would not think there was a fair and just reason for Minnick to withdraw his no contest pleas at that stage of the proceedings. No Wisconsin authority expressly holds that this circumstance constitutes a fair and just reason to withdraw a plea. That renders weaker the unmade claim. Because it is debatable whether the unraised claim was clearly stronger, the state appeals court's conclusion cannot be unreasonable.

Whether he would have succeeded in withdrawing his pleas is beside the point, Minnick maintains, because he was denied legal process. But at sentencing, the state court was not

bound by any previous recommendations, and Minnick could argue that his sentence should be lower than the state or presentence investigation report recommended. Minnick admits he was fully aware that the state court had full sentencing discretion and that the ultimate disposition was up to the court. These facts all suggest that the claim attorney Zell raised on the sentencing advice was arguably stronger than an unraised plea withdrawal request.

The Wisconsin Court of Appeals did not unreasonably apply the *Strickland* deficient-performance prong when it concluded that a plea withdrawal claim was not clearly stronger than the argument that his postconviction counsel advanced. That decision is due the further deference of AEDPA. For these reasons, Minnick was not incorrectly denied relief on this claim.

*          *          *

Minnick's postconviction claims fall short, even more so given the deferential AEDPA standard. Accordingly, we AF-FIRM the judgment of the district court denying his request for habeas relief.