T.C. Memo. 2018-34

UNITED STATES TAX COURT

WHISTLEBLOWER 23711-15W, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23711-15W.                    Filed March 20, 2018.

<u>Sealed</u>, pro se.

<u>Patricia P. Davis</u> and <u>Kevin G. Gillin</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  This whistleblower award case is before the Court on a
motion for summary judgment filed by the Internal Revenue Service (IRS or re-
spondent).  Respondent contends that he is entitled to summary judgment as a mat-
ter of law because the IRS did not initiate "any administrative or judicial action"
on the basis of the information petitioner supplied and did not collect any proceeds

[*2] as a result of that information.  See sec. 7623(b)(1).[1]  We will grant respondent's motion.

## Background

The following facts are derived from the parties' pleadings and motion papers, including the declarations and exhibits attached thereto.  On March 20, 2009, petitioner submitted Form 211, Application for Award for Original Information, to the IRS Whistleblower Office (Office).[2]  His Form 211 outlined information about a primary taxpayer (Target) and three related taxpayers.  Petitioner had previously been employed as an attorney by a law firm that represented Target.  He alleged that Target and the related taxpayers had engaged in tax evasion using offshore entities.

The IRS assigned separate claim numbers to petitioner's claims regarding Target and the related taxpayers, viz., claim Nos. 2009-001459 through 2009-001462 (claims at issue).  Whistleblower Analyst Applebaum was assigned to re-

---

[1]All statutory references are to the Internal Revenue Code in effect at the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Court granted petitioner's motion to proceed anonymously.  When referring to petitioner, we will employ the masculine pronoun and possessive adjective without intending to create any implication concerning petitioner's gender.

[*3] view these claims. On April 20, 2009, she sent the information supplied by petitioner to the IRS Criminal Investigations Division (CID).

In January 2010 petitioner was interviewed by three CID officers, including Supervisory Special Agent (SSA) Schumacher. Petitioner alleges that during this interview he described in detail the operational structure that Target used to effect the alleged tax evasion. Petitioner alleges that the interviewers told him that "they were moving against Target." At their request, petitioner allegedly outlined what documents they should request from Target.

After interviewing petitioner, SSA Schumacher sent the case file to IRS Criminal Tax (CT) Counsel for a determination as to the status of petitioner's information. On April 19, 2010, after receiving CT Counsel's advice, SSA Schumacher completed Form 11369, Confidential Evaluation Report on Claim for Award, recommending that no award be made. Line 9 of this form inquires whether a decision was made "to conduct an audit or investigation of the taxpayer." If not, and if "the case was surveyed or not examined," the officer completing the form is instructed to "attach a brief explanation." SSA Schumacher attached the following explanation:

> CT Counsel evaluated the information and avowed that the information provided by the informant is subject to the attorney-client privilege and cannot be used as a source of the investigation. It is the

**[*4]**   opinion of CT Counsel that * * * [Target] maintains a privilege with the firm that was hired, not the specific attorney or personnel assigned to the client's account.  Therefore, even though the informant was not assigned to work on * * * [Target's] account, the information maintained by the firm, not the individual, is privileged.  Consequently, the specific information relative to * * * [Target] that the informant provided is considered to have the attorney-client privilege and cannot be used to further develop this allegation.  The additional information submitted by the informant is generic and is not helpful to develop the allegations.

On August 16, 2010, the Office received from SSA Schumacher the Form 11369 described above, with an attached memorandum from CT Counsel.  As far as the record reveals, the Office took no action on the four claims at issue during the ensuing four years.  On June 26, 2014, Ms. Applebaum signed the Form 11369, concurring in SSA Schumacher's recommendation that no award be made.  The director of the Office approved her recommendation, and the IRS sent petitioner a letter dated June 27, 2014, stating its adverse determination with respect to the claims at issue.  The letter explained:

> [A]n award can be made only if the information provided results in the collection of additional tax, penalties, interest, or other proceeds.  In this case, the information you provided did not result in the collection of any proceeds.  Therefore, you are not eligible for an award.

Petitioner had moved to a new address and did not receive the June 27, 2014, letter.  In September 2015 he emailed the Office to inquire about the status of the 14 claims he then had pending, including the four claims at issue.  Senior

**[*5]** Tax Analyst Borenstein responded to his inquiry. (Ms. Applebaum had left the Office in May 2015, and Ms. Borenstein assumed responsibility for some of petitioner's claims.) By letter dated September 9, 2015, Ms. Borenstein informed petitioner that 10 of his claims were "still open and under consideration" but that the 4 claims at issue "were closed by Analyst D. Applebaum on June 27, 2014." Ms. Borenstein attached an unsigned copy of the June 27, 2014, letter.

On September 21, 2015, petitioner petitioned this Court for review of the Office's determination. He alleged that the September 9 letter "was the first and only indication" he had received that the Office had denied the four claims at issue. He urged that the September 9 letter should be treated as the "determination regarding [his] award" and that his petition, having been filed within 30 days of that determination, was thus timely. See sec. 7623(b)(4). On the merits, petitioner alleged "upon reliable information and belief" that the IRS had in fact collected substantial proceeds from Target.

On April 14, 2016, respondent moved to dismiss this case for lack of jurisdiction, noting that the petition had not been filed within 30 days of the Office's June 27, 2014, letter. Petitioner timely responded to that motion. On November 16, 2016, respondent moved to withdraw his motion to dismiss, admitting that the Office had no "direct evidence" concerning the mailing of the June 27, 2014, let-

[*6] ter. By order dated November 21, 2016, we directed that respondent's motion to dismiss for lack of jurisdiction was "deemed withdrawn."

On November 30, 2016, respondent filed a motion for summary judgment, to which petitioner timely responded. We denied that motion on February 22, 2017. Viewing the facts and drawing inferences therefrom in the light most favorable to petitioner as the non-moving party, we concluded that material disputes of fact then existed as to whether the IRS had collected proceeds from Target on the basis of information brought to the Secretary's attention by petitioner.

In response to petitioner's informal discovery requests, respondent provided him (pursuant to a protective order) copies of the Office's administrative claim file, IRS records relating to Target and the related taxpayers, and declarations from IRS personnel. Petitioner expressed dissatisfaction with this response. Respondent then filed, on July 20, 2017, a second motion for summary judgment.

In support of his second motion respondent supplied a declaration from SSA Schumacher, the CID officer who had interviewed petitioner. Mr. Shumacher averred that: (1) he was instructed by CT Counsel to forgo any investigation of Target because petitioner's information was privileged or "tainted"; (2) he was further instructed to put petitioner's information into a folder "not to be used for any investigation" and to place any subsequent information supplied by petitioner

**[\*7]** into that same folder; (3) complying with these instructions, he had closed his preliminary investigation of Target and put all information supplied by petitioner "into an electronic folder, which [he] did not further access"; and (4) "at no time did [he] provide petitioner's information to any other office within the IRS, other than the CT Counsel."

As additional support for his second motion for summary judgment, respondent supplied declarations from Ms. Applebaum and Ms. Borenstein. Ms. Applebaum averred that: (1) after receiving CT Counsel's analysis, she decided that petitioner's information would not be sent "to any other IRS office for further evaluation"; (2) none of the information petitioner supplied was thereafter "utilized by respondent in any way"; and (3) her conclusion that petitioner was not entitled to an award "was based on the fact that respondent had not taken any administrative or judicial action against * * * [Target] or any related entities, or collected any proceeds from any taxpayer based on petitioner's information."

Ms. Borenstein averred that she had queried the IRS Integrated Data Retrieval System (IDRS) to review the audit history of Target and the related taxpayers for tax years 2009 through 2014. For Target, the only tax year that showed any audit activity was 2013. That activity consisted, not of an examination, but of a survey "that did not result in any adjustment" for Target's 2013 tax year. Ms.

[*8] Borenstein averred that she had similarly reviewed IDRS records for the related taxpayers and ascertained that "the IRS ha[d] not made adjustments to any of the related taxpayers' returns for tax years 2009 through 2014."

Ms. Borenstein attached to her declaration a copy of the IDRS printout for Target. On November 21, 2017, respondent filed a supplemental declaration from Ms. Borenstein to which were attached IDRS printouts for the related taxpayers. These records show that the IRS did not examine (1) any of Target's returns for 2009 through 2014 or (2) any of the related taxpayers' returns for 2009 through 2014, with the exception of one related taxpayer's return for 2009. These records also show that the IRS did not collect from Target or the related taxpayers for any of these years, apart from amounts self-reported on their returns, any tax, penalty, interest, or other proceeds.

## Discussion

### A.    Jurisdiction

Section 7623(b)(4) provides that "[a]ny determination regarding an award * * * may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." This statute is unusual as a jurisdiction-conferring provision because it does not prescribe any particular form of notice to the would-be petitioner. See Whistleblower 4496-

[*9] 15W v. Commissioner, 148 T.C. __, __ (slip op. at 12) (May 25, 2017). In prior cases "[w]e have held that the name or label of a document does not control whether the document constitutes a determination" and that "our jurisdiction is established when the Commissioner issues a written notice that embodies a determination." Cooper v. Commissioner, 135 T.C. 70, 75 (2010).

The 30-day period within which a petition must be filed "begins on the date of mailing or personal delivery of the determination to the whistleblower at his last known address." Kasper v. Commissioner (Kasper I), 137 T.C. 37, 45 (2011). The IRS "must prove by direct evidence the date and fact of mailing or personal delivery of the notice to the whistleblower." Ibid.; see Allibone v. Commissioner, T.C. Memo. 2016-91, 111 T.C.M. (CCH) 1404, 1405-1406. When moving to withdraw his motion to dismiss this case, respondent admitted that he had no direct evidence of the date and fact of mailing of the June 27, 2014, denial letter to petitioner.

Although "litigants cannot stipulate to jurisdiction," the parties (absent improper collusion) "may agree on the facts that determine jurisdiction." Tilden v. Commissioner, 846 F.3d 882, 887 (7th Cir. 2017) (emphasis in original), rev'g and remanding T.C. Memo. 2015-188; Pearson v. Commissioner, 149 T.C. __, __ (slip op. at 13) (Nov. 29, 2017). Because respondent admits that he lacks "direct evi-

**[*10]** dence" concerning the date and fact of mailing of the June 27, 2014, letter, that document did not trigger the running of the 30-day filing period. The only other letter by which the Office communicated to petitioner its determination concerning the four claims at issue was the September 9, 2015, letter. Because petitioner petitioned this Court within 30 days of that determination letter, his petition was timely, and we have jurisdiction under section 7623(b)(4) to decide this case.

B.     Standard and Scope of Review

We review the Secretary's determination as to whether a whistleblower is entitled to an award under section 7623(b)(1) by applying an abuse-of-discretion standard. Kasper v. Commissioner (Kasper II), 150 T.C. __, __ (slip op. at 23) (Jan. 9, 2018). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

In ascertaining whether the Secretary abused his discretion, we generally confine our review to the administrative record. Kasper II, 150 T.C. at __ (slip op. at 20). "The administrative record comprises all information contained in the administrative claim file that is relevant to the award determination and not protected by * * * privileges." Sec. 301.7623-3(e)(1), Proced. & Admin. Regs. Respondent

[*11] may supplement the administrative record (or we may direct that he do so) for a variety of reasons, e.g., where the IRS action is not adequately explained in the administrative record or where the IRS in making its determination relied on information not included in the record it compiled. See, e.g., Wilson v. Commissioner, 705 F.3d 980, 991 (9th Cir. 2013) (acknowledging that a "reviewing court may require supplementation of the administrative record if it is incomplete" (quoting Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005))), aff'g T.C. Memo. 2010-134; Tri-Valley CAREs v. DOE, 671 F.3d 1113, 1130 (9th Cir. 2012); Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989); Kasper II, 150 T.C. at __ (slip op. at 20-21).

The documents respondent submitted to support his second motion for summary judgment include the declarations of SSA Schumacher, Ms. Applebaum, and Ms. Borenstein, plus the IDRS records accompanying Ms. Borenstein's declarations. These documents were not part of the administrative claim file originally compiled by the Office. Petitioner objects to our consideration of these documents, urging that respondent "seeks to supplement the * * * administrative claim file with non-contemporaneous information that Ms. Applebaum did not use or base her decision on."

**[\*12]** We reject this argument.  In her June 27, 2014, letter Ms. Applebaum clearly expressed the ground on which the Office principally relied in denying petitioner's claims, namely, that "the information you provided did not result in the collection of any proceeds."  Where a contemporaneous explanation of the agency action exists, a reviewing court may appropriately supplement the administrative record, by declaration or otherwise, to include information that clarifies the basis for that agency action.  See, e.g., Camp v. Pitts, 411 U.S. 138, 142-143 (1973); Esch, 876 F.2d at 991; Klingenberg v. Commissioner, T.C. Memo. 2011-247, 102 T.C.M. (CCH) 398, 401 (ruling that testimony of IRS settlement officer explaining "why he made his administrative determinations is not extrarecord evidence"), aff'd, 551 F. App'x 354 (9th Cir. 2014); cf. Theodore Roosevelt Conservation P'Ship v. Salazar, 616 F.3d 497, 514 (D.C. Cir. 2010) (noting that resorting to extra-record information "to determine whether administrative record is deficient * * * is the exception, not the rule").

Here, the declarations of Ms. Applebaum, SSA Schumacher, and Ms. Borenstein (who took over for Ms. Applebaum after she left the Office) explain more fully the basis for the Office's determination that Ms. Applebaum articulated in 2014.  Ms. Applebaum signed the Form 11369 recommending denial of an award, and her supplemental declaration elaborates her reasoning process in slightly

**[\*13]** greater detail. SSA Schumacher prepared the Form 11369 and the attached

explanation as to why he recommended that no award be made. His supplemental

declaration confirms that he followed CT Counsel's instructions to ensure that pe-

titioner's information not be circulated within the IRS. And Ms. Borenstein's dec-

larations simply attach IDRS records, available to Ms. Applebaum in 2014, con-

firming that the IRS collected no proceeds from Target or the related taxpayers.[3]

We have routinely considered declarations of this kind on summary judgment,

both in whistleblower cases[4] and in other situations where we review IRS action

for abuse of discretion, such as collection due process (CDP) cases.[5] Petitioner

has advanced no persuasive reason for departing from this practice here.

---

[3]The IDRS records accompanying Ms. Borenstein's declarations show a print date of July 2017, when she queried the IDRS system. But the data she thus retrieved consisted of tax records for 2009 through 2014, which were fully available to Ms. Applebaum when she issued the June 2014 denial letter. Because Ms. Applebaum had left the IRS in May 2015, she could not have issued queries to the IDRS system in November 2016 and July 2017 when respondent filed his motions for summary judgment.

[4]See, e.g., Whistleblower 14376-16W v. Commissioner, T.C. Memo. 2017-181, at \*2; Gonzalez v. Commissioner, T.C. Memo. 2017-105, 113 T.C.M. (CCH) 1475, 1476-1477; Perales v. Commissioner, T.C. Memo. 2017-90, 113 T.C.M. (CCH) 1423, 1424.

[5]See, e.g., Feldman v. Commissioner, T.C. Memo. 2017-148, at \*2; McCree v. Commissioner, T.C. Memo. 2017-145, at \*1-\*2; Daniel v. Commissioner, T.C. Memo. 2017-82, 113 T.C.M. (CCH) 1397, 1397.

**[*14]** C.     Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The Court may grant summary judgment "upon all or any part of the legal issues in controversy" when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(a) and (b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  Sundstrand Corp., 98 T.C. at 520.  The nonmoving party "may not rest upon the mere allegations or denials" of his pleadings but instead "must set forth specific facts showing that there is a genuine dispute for trial."  Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

As explained more fully below, respondent has shown that there exist no genuine disputes of material fact as to whether the Secretary abused his discretion in declining to make an award with respect to the four claims at issue.  We accordingly conclude that this case may appropriately be adjudicated summarily.

**[*15]** D.    <u>Analysis</u>

Section 7623(a) authorizes the Secretary to pay awards for "detecting under-payments of tax" or "detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same." Awards under section 7623(a) are discretionary. However, Congress has provided for nondiscretionary (i.e., mandatory) awards to whistleblowers where the Secretary "proceeds with any administrative or judicial action described in subsection (a)" and specified additional requirements are met. Sec. 7623(b)(1).

Section 7623(b) provides that, "[i]f the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual," that individual will, subject to certain conditions, receive an award of 15% to 30% of the proceeds collected. Sec. 7623(b)(1). The size of the award depends on the extent to which the whistleblower "substantially contributed to such action." Sec. 7623(b)(1) (last sentence) and (2). To qualify for a nondiscretionary award the whistleblower must also satisfy a $2 million threshold requirement. Sec. 7623(b)(5)(B).[6]

---

[6]The Bipartisan Budget Act of 2018, Pub. L. No. 115-123, sec. 41108, 132 Stat. at 158-159, amended some of the terminology in section 7623. None of these amendments, whose effective date is uncertain, has any relevance to the issues we decide here.

**[\*16]** Under this statutory scheme, a whistleblower cannot qualify for a nondiscretionary award unless two conditions are met. First, the Secretary must "proceed[] with an[] administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention" by the whistleblower. Second, the Secretary must derive proceeds from this action. Sec. 7623(b)(1); see Cohen v. Commissioner, 139 T.C. 299, 303 (2012) ("We can provide relief under section 7623(b) only after the Commissioner has initiated an administrative or judicial action and collected proceeds."), aff'd, 550 F. App'x 10 (D.C. Cir. 2014); Cooper v. Commissioner, 136 T.C. 597, 600 (2011) ("[A] whistleblower award is dependent upon both the initiation of an administrative or judicial action and the collection of tax proceeds." (Emphasis in original.)).

While we have jurisdiction to review the IRS' award determination, we do not have authority to "review the Commissioner's determination of the alleged tax liability to which the claim pertains." Cohen, 139 T.C. at 302. Nor do we have authority "to direct the Secretary to proceed with an administrative or judicial action." Cooper, 136 T.C. at 600. If the IRS does not proceed with an administrative or judicial action against the target taxpayer, there by definition can be no "collected proceeds" and hence no whistleblower award. See id. at 601.

**[\*17]** We conclude that the Office did not abuse its discretion in denying petitioner's claims. The administrative record, as properly supplemented,[7] shows that the Secretary did not "proceed[] with any administrative or judicial action" against Target or the related taxpayers that was "based on information brought to the Secretary's attention" by petitioner. See sec. 7623(b)(1). The record reveals that CID took preliminary steps toward an investigation of Target. Before proceeding further, however, CID was required to secure approval from CT Counsel to use petitioner's information for that purpose.

After receiving CT Counsel's opinion that petitioner's information was covered by the attorney-client privilege and hence unusable, CID closed its investigation of Target.[8] SSA Schumacher averred that he thereafter put petitioner's infor-

---

[7]A court reviewing agency action may remand a case to enable the agency to consider material that was not part of the original administrative record. See, e.g., Carlton v. Babbitt, 26 F. Supp. 2d 102, 108 (D.D.C. 1998). But a remand would serve no useful purpose here, because the material the IRS submitted to supplement the record uniformly supports its original decision. If we were to remand this case, the IRS would surely reach the same conclusion it originally reached, and the case would return to us with the same record we now have. In other situations where we review IRS action for abuse of discretion, such as CDP cases, we routinely decline to order a remand where it would serve no useful purpose. See Burke v. Commissioner, 124 T.C. 189, 194 n.5 (2005); Kemper v. Commissioner, T.C. Memo. 2003-195, 86 T.C.M. (CCH) 12, 16.

[8]Petitioner disputes the conclusion that his information was covered by the attorney-client privilege. In reviewing the Office's determination, however, we do

(continued...)

[*18] mation into a secure folder and did not provide it "to any other office within the IRS." After receiving the Form 11369 from SSA Schumacher, Ms. Applebaum similarly concluded that petitioner's information would not be shared with any other IRS office. Because CID did not proceed against Target, and because no other IRS office with investigative authority received petitioner's information, it would have been impossible for the Secretary to proceed with any action on the basis of information petitioner supplied. See sec. 7623(b)(1).[9]

In any event, the IDRS transcripts confirm that the IRS commenced no examination of Target or the related taxpayers for 2009 through 2014, except for one of the related taxpayers for 2009, and collected no proceeds from them as a result of investigative action. Petitioner challenges respondent's reliance on these transcripts, urging that Ms. Applebaum should have dug deeper, reviewing Target's tax

---

[8](...continued)
not have authority to second-guess the IRS' decision not to proceed with an administrative or judicial action. Our authority is limited to ascertaining whether the IRS in fact proceeded with such an action and collected proceeds as a result. Cohen, 139 T.C. at 302; Cooper, 136 T.C. at 600-601.

[9]Petitioner asserts that the Form 11369, which includes SSA Schumacher's explanation as to why CID terminated its preliminary investigation of Target, constitutes "inadmissible hearsay." It seems clear that this document, if sought to be introduced into evidence at trial, would be covered by the "business records" exception to the hearsay rule. See Fed. R. Evid. 803(6)(B). In any event, the Form 11369 is a central component of the administrative record on which our review must be based. See sec. 301.7623-3(e)(2)(iii), Proced. & Admin. Regs.

**[*19]** returns or making inquiries of other IRS offices. We have rejected a similar argument in the CDP context when reviewing IRS action for abuse of discretion, and we likewise reject it here. We have consistently held in CDP cases that a settlement officer, absent a demonstrable irregularity in the assessment process, may rely on account transcripts rather than underlying source documents when verifying (for example) that taxes have been properly assessed. See, e.g., Davis v. Commissioner, 115 T.C. 35, 40-41 (2000); Tornichio v. Commissioner, T.C. Memo. 2002-291, 84 T.C.M. (CCH) 578.

Petitioner nevertheless hypothesizes that the IRS may have maintained an action against Target "indirectly," i.e., through "its involvement with another governmental office." Petitioner asserts his belief that: (1) the U.S. Department of Justice (DOJ) initiated a prosecution of Target for securities fraud; (2) this prosecution resulted in plea agreements resulting in payment of substantial fines for insider trading in violation of the Federal securities laws; and (3) the DOJ charges against Target may have included criminal tax counts that were dropped.

This line of argument is unpersuasive for a variety of reasons. Section 7623(b)(1) authorizes a nondiscretionary award only "if the Secretary proceeds with an administrative or judicial action." CID did not proceed with a criminal

**[\*20]** investigation of Target or any of the related taxpayers. Whether CID officials assisted another governmental unit in an advisory capacity is not a material fact.

In any event, petitioner would be entitled to a nondiscretionary award only if the IRS collected proceeds, and the IDRS records show that it did not. The recovery from Target that petitioner hypothesizes was for violation of the Federal securities laws. Section 7623(b) provides for mandatory awards only if the Secretary collects proceeds resulting from an "administrative or judicial action described in subsection (a)," viz., an action for "detecting underpayments of tax" or "detecting * * * persons guilty of violating the internal revenue laws." Sec. 7623(a)(1) and (2). Fines for insider trading secured by DOJ do not constitute "tax proceeds" collected by the Secretary. Cooper, 136 T.C. at 600.[10]

---

[10]We have held that "collected proceeds" under section 7623(b)(1) are not limited to amounts collected under title 26, but may also include certain criminal fines and civil forfeitures collected under title 18. See Whistleblower 21276-13W v. Commissioner, 147 T.C. 121, 139-140 (2016) (holding that "collected proceeds" include fines and forfeitures resulting from guilty pleas to the filing of false Federal income tax returns, conspiring to defraud the IRS, and tax evasion). But in order to constitute "collected proceeds" for purposes of section 7623(b)(1), criminal fines and forfeitures must be related to "the internal revenue laws." See id. at 124, 130-133. That is because the statute authorizes mandatory awards only where proceeds are collected in actions related to "detecting underpayments of tax" or "detecting * * * persons guilty of violating the internal revenue laws." Sec. 7623(a) (cross-referenced by section 7623(b)(1)).

**[\*21]** Whether the DOJ prosecution of Target included tax charges that were dropped is not a material fact. While we have jurisdiction to review the IRS' award determination, we do not have authority to "review the Commissioner's determination of the alleged tax liability to which the claim pertains," Cohen, 139 T.C. at 302, or to "direct the Secretary to proceed with an administrative or judicial action," Cooper, 136 T.C. at 600. Our authority is limited to determining whether the IRS in fact collected proceeds; it does not extend to speculating whether the IRS might have collected proceeds if it had chosen to pursue an examination or if prosecutorial discretion had been exercised differently.[11]

Finally, petitioner faults Ms. Borenstein for limiting her review of IDRS records to pre-2015 tax years of Target and the related taxpayers. But we are reviewing a determination that the Office made in June 2014. The relevant question is whether the IRS had collected any proceeds from Target or the related taxpayers as of that date.

---

[11]In a similar vein, petitioner speculates that the supposed DOJ prosecution prompted Target, in subsequent tax years, to recognize, report, and pay tax on income that Target would have otherwise concealed. If this were true, it would be irrelevant because any tax paid would not represent proceeds of an administrative or judicial action commenced by the Secretary. See sec. 7623(b)(1); Whistleblower 16158-14W v. Commissioner, 148 T.C. __, __ (slip op. at 13) (Apr. 17, 2017) ("Collected proceeds do not include self-reported amounts collected when a taxpayer changes its reporting for years that are not part of the action.").

**[*22]** Petitioner replies that the date on which the Office acted on the four claims at issue--June 27, 2014--"appears to have been selected arbitrarily." He speculates that the Office may have chosen this time to act because it believed that proceeds from Target might be forthcoming and wished to "cut off information at 2014." Petitioner has set forth no "specific facts," see Rule 121(d), to support his conspiracy theory, and we will not entertain it. If petitioner believes that the IRS may have proceeded with an administrative or judicial action against Target and collected proceeds from Target after June 27, 2014, petitioner is free to file with the Office a new Form 211 advancing that claim.

To reflect the foregoing,

An appropriate order and decision will be entered for respondent.