In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 18-1713
RICHARD W. SHIRLEY, JR.,
 Petitioner-Appellant,
 v.

LIZZIE TEGELS,
 Respondent-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Eastern District of Wisconsin.
 No. 2:14-cv-01346-NJ — Nancy Joseph, Magistrate Judge.
 ____________________

 ARGUED SEPTEMBER 28, 2022 — DECIDED MARCH 8, 2023
 ____________________

 Before EASTERBROOK, HAMILTON, and BRENNAN, Circuit
Judges.
 BRENNAN, Circuit Judge. After a jury trial Richard Shirley
was convicted of ﬁrst-degree reckless homicide. On appeal
from the denial of his habeas corpus petition under 28 U.S.C.
§ 2254, Shirley argues the state trial court erred when it per-
mitted him to be shackled during his testimony, which he
says violated his constitutional right to present a complete de-
fense. Because no Supreme Court case clearly establishes that
2 No. 18-1713

the decision to shackle a criminal defendant while testifying
violates that right, federal postconviction relief here is pre-
cluded. We therefore aﬃrm.
 I. Background
 What began as a friendly encounter between Shirley and
Frederick Perry at a Milwaukee gas station turned into a
struggle between them to possess a gun. Perry died from mul-
tiple gunshot wounds sustained during that ﬁght. In 2008, a
Milwaukee jury found Shirley guilty of the ﬁrst-degree reck-
less homicide of Perry under Wisconsin Statute § 940.02(1).
 Shirley lost part of his left leg from an unrelated injury and
uses a prosthetic device below his left knee. Although he can
walk, during trial Shirley was placed in a wheelchair with his
legs shackled. The record does not give the reason for this
physical restraint. At one point Shirley’s defense counsel said
the decision stemmed from “some really bad policy in the
sheriﬀ’s department.” To prevent the jury from observing the
shackles, cloth was draped over both counsel tables.
 During voir dire Shirley’s restraints caught the attention
of one juror. When defense counsel asked the jurors if they
believed “Shirley must have done something wrong” merely
“because he’s sitting here,” Juror 34 responded in the aﬃrm-
ative, saying “if he’s sitting there in cuﬀs, he did something.”
Voir dire continued without further mention of the restraints.
After the trial court excused the panel, the prosecutor ﬂagged
Juror 34’s comment. Defense counsel, after consulting with
Shirley and his family, stated he was “comfortable … going
forward” with the jury panel if the parties could question Ju-
ror 34 individually about his observations.
No. 18-1713 3

 During that questioning Juror 34 conﬁrmed he had “no-
ticed … cuﬀs” around Shirley’s feet but had not mentioned
the restraints to any other jurors. The juror also said his obser-
vations did not bias him against Shirley or in favor of the
State. The trial court then instructed Juror 34 not to discuss
the matter with the other jurors. Shirley and his counsel said
they were satisﬁed with Juror 34’s responses. Both parties de-
clined to question other jurors about the shackles or to strike
Juror 34 for cause or otherwise. Nothing in the record sug-
gests any other juror saw the restraints during the trial.
 The restraints came up again when Shirley took the wit-
ness stand. The trial court informed the parties that there re-
mained “an issue with regards to security” on which the court
“defer[red] to the sheriﬀ’s department.” The court said
Shirley would “be moved up here prior to the jury coming in”
and “secured while in this location.” After a discussion oﬀ the
record, the court noted that Shirley’s counsel had “ap-
pealed … to a higher authority in the sheriﬀ’s department …
the sheriﬀ’s department policy” of having “defendants re-
strained.” Defense counsel conﬁrmed his desire to preserve
Shirley’s Fifth and Sixth Amendment objections “with respect
to being chained to the ﬂoor during the course of this trial.”
But he did not request accommodations to muﬄe the noise of
the shackles if Shirley moved while on the witness stand.
 The jury found Shirley guilty, and he was sentenced to 25
years in prison followed by 10 years of extended supervision.
He ﬁled a postconviction motion for a new trial and resen-
tencing in which he raised the issue of the shackling. The trial
court denied the motion.
 Shirley appealed, arguing that his presumption of inno-
cence was violated because Juror 34 noticed his restraints. He
4 No. 18-1713

also contended that being shackled during his testimony
inhibited his right to present a complete defense. Shirley as-
serted that the shackles limited his ability “to approach exhib-
its, make demonstrations during his testimony and show the
jury which leg his prosthesis was on.”
 The Wisconsin Court of Appeals rejected Shirley’s claims.
It could not locate an explanation in the record for the re-
straint decision. But Shirley forfeited his objection by not
striking Juror 34, and there was no prejudice from that juror’s
observations. The state appeals court also could not conclude
that the shackles “inhibited [Shirley’s] ability to participate in
his defense.” The record showed Shirley had been able to “di-
rect his counsel’s hand to point out speciﬁc items on the ex-
hibits” and even “point to certain exhibits himself.” He also
“had little diﬃculty communicating” in an “intelligent and
articulate” manner from the witness stand. Further, Shirley
had not requested accommodations or informed the trial
court that his ability to approach the exhibits posed a prob-
lem. For these reasons, his ability-to-defend claim was re-
jected, as was his motion for reconsideration. The Wisconsin
Supreme Court denied his petition for review.
 Shirley petitioned for habeas relief under 28 U.S.C. § 2254,
which the federal district court denied. Like the Wisconsin
Court of Appeals, the district court could not discern any rea-
son for restraining Shirley other than references to the sher-
iﬀ’s department policy. After reviewing the record, the
district court held that any challenge to Juror 34’s observa-
tions was procedurally defaulted and that the Wisconsin
Court of Appeals did not unreasonably apply clearly estab-
lished federal law in denying the ability-to-defend claim.
Shirley appeals that decision.
No. 18-1713 5

 II. Analysis
 Shirley argues that the state trial court’s decision to permit
him to be shackled during his testimony violated his consti-
tutional right to present a complete defense. He asserts that
the Wisconsin Court of Appeals unreasonably applied clearly
established federal law in concluding otherwise. We review
the district court’s denial of habeas relief de novo. Hinkle v.
Neal, 51 F.4th 234, 239 (7th Cir. 2022).
 The Antiterrorism and Eﬀective Death Penalty Act
(AEDPA) bars federal habeas relief for claims “adjudicated on
the merits” in state court unless the state court decision “was
contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Su-
preme Court of the United States.” 28 U.S.C. § 2254(d)(1). This
deferential standard “reﬂects the view that habeas corpus is a
‘guard against extreme malfunctions in the state criminal jus-
tice systems,’ not a substitute for ordinary error correction
through appeal.” Minnick v. Winkleski, 15 F.4th 460, 468 (7th
Cir. 2021) (quoting Harrington v. Richter, 562 U.S. 86, 102–03
(2011)). Thus, habeas relief is precluded unless a petitioner
demonstrates that the state court’s ruling “was so lacking in
justiﬁcation that there was an error well understood and com-
prehended in existing law beyond any possibility for fair-
minded disagreement.” Harrington, 562 U.S. at 103.
 We ﬁrst address whether Shirley “seeks to apply a rule of
law that was clearly established at the time his state-court
conviction became ﬁnal.” Williams v. Taylor, 529 U.S. 362, 390
(2000); Yarborough v. Alvarado, 541 U.S. 652, 660 (2004) (“We
begin by determining the relevant clearly established law.”).
Under AEDPA, clearly established federal law “refers to the
holdings, as opposed to the dicta, of [the Supreme] Court’s
6 No. 18-1713

decisions.” Carey v. Musladin, 549 U.S. 70, 74 (2006) (quoting
Williams, 529 U.S. at 412). In other words, clearly established
federal law means “the governing legal principle or principles
set forth by the Supreme Court at the time the state court ren-
ders its decision.” Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003).
 In deciding what law is clearly established, federal courts
must not frame Supreme Court holdings at “a high level of
generality.” Nevada v. Jackson, 569 U.S. 505, 512 (2013). Doing
so “could transform even the most imaginative extension of
existing case law into ‘clearly established Federal law.’” Id.
(citing § 2254(d)(1)). Instead, “courts must reasonably apply
the rules ‘squarely established’ by [the Supreme] Court’s
holdings to the facts of each case.” White v. Woodall, 572 U.S.
415, 427 (2014) (quoting Knowles v. Mirzayance, 556 U.S. 111,
122 (2009)). Section 2254(d)(1) “does not require state and fed-
eral courts to wait for some nearly identical factual pattern be-
fore a legal rule must be applied.” Panetti v. Quarterman, 551
U.S. 930, 953 (2007) (internal quotation marks omitted). But
“‘if a habeas court must extend a rationale before it can apply
to the facts at hand,’ then by deﬁnition the rationale was not
‘clearly established at the time of the state-court decision.’”
Woodall, 572 U.S. at 426 (2014) (quoting Yarborough, 541 U.S. at
666).
 Shirley argues that the Wisconsin Court of Appeals unrea-
sonably applied clearly established federal law when it held
that his shackling did not inhibit his right to participate in his
defense. He contends the restraints kept him from leaving the
witness stand, unlike other witnesses, to point out exhibits or
provide demonstrations. In support of his petition, Shirley
points to various Supreme Court cases recognizing a criminal
defendant’s constitutional right to participate in his own
No. 18-1713 7

defense: Chambers v. Mississippi, 410 U.S. 284, 294 (1973); Crane
v. Kentucky, 476 U.S. 683, 690 (1986); Rock v. Arkansas, 483 U.S.
44, 52 (1987); United States v. Scheﬀer, 523 U.S. 303, 308 (1998);
Holmes v. South Carolina, 547 U.S. 319, 324 (2006). He also relies
on the Supreme Court’s decision in Deck v. Missouri, 544 U.S.
622 (2005), a case addressing the constitutionality of visible
restraints. Yet the lack of a clearly established rule of federal
law determines Shirley’s claim.
 No Supreme Court precedent has squarely addressed
whether placing a criminal defendant in hidden physical re-
straints unconstitutionally inhibits that defendant’s ability to
present a complete defense at trial. In Chambers, the Court rec-
ognized that criminal defendants have “the right to a fair op-
portunity to defend against the State’s accusations.” 410 U.S.
at 294. This constitutional guarantee of “a meaningful oppor-
tunity to present a complete defense” has its roots “directly in
the Due Process Clause of the Fourteenth Amendment [and]
in the Compulsory Process or Confrontation clauses of the
Sixth Amendment.” Crane, 476 U.S. at 690 (quoting California
v. Trombetta, 467 U.S. 479, 485 (1984)). And presenting a com-
plete defense encompasses a defendant’s “right to testify”
about “his own version of events in his own words.” Rock, 483
U.S. at 52. But this right “is not unlimited.” Scheﬀer, 523 U.S.
at 308. So “[s]tate and federal rulemakers have broad latitude
under the Constitution to establish rules excluding evidence
from criminal trials.” Holmes, 547 U.S. at 324 (quoting Scheﬀer,
523 U.S. at 308). To not violate constitutional requirements,
court rules restricting evidence “may not be arbitrary or dis-
proportionate to the purposes they are designed to serve,”
Rock, 483 U.S. at 56, or “infringe[ ] upon the weighty interest
of the accused,” Scheﬀer, 523 U.S. at 308.
8 No. 18-1713

 Cases like Chambers, Crane, and Rock do not speak to, much
less clearly establish, when, how, or whether being shackled
impedes a defendant’s ability to present a complete defense.
Rather, the Chambers line of cases speciﬁcally addresses
“when the exclusion of evidence violates the right to present a
complete defense.” Hinkle, 51 F.4th at 242 (emphasis added);
see also Kubsch v. Neal, 838 F.3d 845, 854–58 (7th Cir. 2016) (en
banc) (analyzing the Supreme Court’s application of Cham-
bers). Here, Shirley does not contest the exclusion of any evi-
dence or testimony. Instead, he appeals to these decisions for
the general proposition that criminal defendants have a con-
stitutional right to participate in their defense. But “[t]his
proposition is far too abstract to establish clearly the speciﬁc
rule” needed to grant Shirley habeas relief. Lopez v. Smith, 574
U.S. 1, 5 (2014). None of these cases address the interplay of
physical restraints with a defendant’s ability to participate in
his own defense.
 Shirley also points to the Supreme Court’s holding in Deck,
544 U.S. 622, and argues that the use of shackles impedes a
defendant’s ability to participate in his defense. In Deck, the
Supreme Court held that “the Constitution forbids the use of
visible shackles during the penalty phase, as it forbids their
use during the guilt phase, unless that use is ‘justiﬁed by an
essential state interest’ … speciﬁc to the defendant on trial.”
Id. at 624 (quoting Holbrook v. Flynn, 475 U.S. 560, 568–69
(1986)). The Court reasoned that prohibiting the routine use
of visible shackles gave eﬀect to important legal principles,
such as helping a defendant “secure a meaningful defense.”
Id. at 631. Visible shackles could, for example, “interfere with
a defendant’s ability to participate in his own defense, say, by
freely choosing whether to take the witness stand on his own
behalf” or could “interfere with the accused’s ability to
No. 18-1713 9

communicate with his lawyer.” Id. (internal quotation marks
omitted). Trial courts must therefore make “individualized
security determinations” about the need for visible restraints.
Id. at 631, 632.
 Although Shirley cites Deck, he does not rely directly on
its holding. Deck forbids, subject to exceptions, the use of vis-
ible shackles during the guilt and penalty phases of a trial. 544
U.S. at 624. But apart from Juror 34’s observation during voir
dire, Shirley’s restraints were hidden from the jury’s view
throughout trial. And while no essential state interest was
identiﬁed for placing him in shackles, Shirley does not chal-
lenge that failure on appeal.
 Rather, Shirley challenges his ability to present a complete
defense due to being restrained. In doing so, Shirley argues
that the reason underlying the Court’s ruling in Deck—that
use of visible shackles may impede a defendant’s ability to
defend himself—is clearly established federal law. Yet the
Court’s observation that the use of shackles may interfere
with a defendant’s ability to defend oneself, Deck, 544 U.S. at
631, is a reason for its decision—not an independent rule or
standard governing shackling in general. For Deck to provide
Shirley relief would require extending it to a new factual con-
text. Such an extension, by deﬁnition, does not constitute
“clearly established Federal law,” which under § 2254(d)(1) is
limited to Supreme Court holdings. Williams, 529 U.S. at 365.
Shirley’s reliance on the Supreme Court’s reason underlying
the rule in Deck, as opposed to its holding, thus falls short.
 Given the lack of clearly established Supreme Court prec-
edent on the question presented, “it cannot be said that the
state court ‘unreasonabl[y] appli[ed] clearly established Fed-
eral law.’” Musladin, 549 U.S. at 77 (quoting § 2254(d)(1)). The
10 No. 18-1713

Supreme Court has not directly decided whether shackling
during a criminal defendant’s testimony violates the constitu-
tional right to present a complete defense. And “[i]t is not an
unreasonable application of clearly established Federal law
for a state court to decline to apply a speciﬁc legal rule that
has not been squarely established by [the Supreme] Court.”
Harrington, 562 U.S. at 101 (quoting Knowles, 556 U.S. at 122).
The Wisconsin Court of Appeals therefore did not contradict
or unreasonably apply clearly established federal law. So we
AFFIRM the district court’s denial of Shirley’s habeas petition.
No. 18-1713 11

 HAMILTON, Circuit Judge, concurring. I join the court’s
opinion because it correctly applies the high standard of 28
U.S.C. § 2254(d) and because petitioner Shirley and his
counsel waived the challenge available regarding Juror 34,
who saw the shackles on Shirley.
 At the same time, it’s troubling, to say the least, that the
parties and the courts considering this case have not found in
the record any individualized justiﬁcation for shackling
Shirley to a wheelchair during his trial. The shackles appear
to have been a matter of routine sheriﬀ’s oﬃce policy.
Shackles can be justiﬁed in individual cases, but such routine
use of shackles is an invitation for reversible error. Deck v.
Missouri, 544 U.S. 622, 626–29 (2005); United States v.
Henderson, 915 F.3d 1127, 1133–41 (7th Cir. 2019) (Hamilton,
J., dissenting from denial of supervisory writ of mandamus to
block routine use of full restraints on all detained defendants
in pretrial hearings in federal district court); Woods v. Thieret,
5 F.3d 244, 248 (7th Cir. 1993) (emphasizing judge’s personal
responsibility for deciding independently about restraints
during trials).
 The holding of Deck prohibits routine use of visible shack-
les. 544 U.S. at 633. As the court’s opinion makes clear, we
cannot extend that holding in this habeas case from state
courts. But the reasoning of Deck points in the direction
Shirley argues we should go, where trial courts should also
worry about audible shackles. Shirley argues that he was dis-
tracted during his own testimony by trying to hold com-
pletely still to avoid the sound of clinking shackles in the
courtroom.
 Given how recognizable the sound of clinking shackles
can be, concealing restraints from view does not necessarily
12 No. 18-1713

prevent jurors from knowing that a defendant is shackled.
This knowledge (and not through which sense it was ac-
quired) was what the Supreme Court found undermined one
of the “three fundamental legal principles” implicated by
courtroom shackling. See Deck, 544 U.S. at 630–33.