In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-3162

ARTHUR GRADY,

*Petitioner-Appellant,*

*v.*

CHARLES TRUITT,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20-cv-02530 — **Mary M. Rowland**, *Judge.*

———————————

ARGUED JULY 12, 2023 — DECIDED JULY 20, 2023

———————————

Before SYKES, *Chief Judge,* and ROVNER and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* A state-court jury convicted Arthur Grady of first-degree murder after a fatal shooting. At the same time, in response to a special-verdict form, the jury found that the State had not proved that Grady was the triggerman. Contending that the special-verdict finding negated the State's sole theory of guilt, Grady seeks a writ of habeas corpus under 28 U.S.C. § 2254(a). He does so through the lens

of ineffective assistance of counsel, because his direct-appeal lawyer raised only two issues on appeal, both of which Grady regards as significantly weaker than the inconsistent-verdict argument. But a careful look at the record satisfies us that the state appellate court's rejection of this contention was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). We therefore affirm the district court's denial of Grady's petition.

**I**

We rely on the state court's account of the facts, as we see nothing to disturb the usual presumption of correctness. See 28 U.S.C. § 2254(e)(1). In 2009, Grady and his roommate Aaron Bronson ran into the victim at a casino in Indiana. Later in the evening, they went to the victim's Chicago home, where he was shot and killed just outside. *People v. Grady*, 2019 IL App (1st) 163012-U ¶ 3. Bronson cooperated with the state and gave one account of how the victim died; Grady's story was significantly different.

Grady testified that on the night of the shooting, he briefly stopped at the victim's roulette table to investigate a commotion; he and Bronson then decided to leave the casino. He got into Bronson's truck and quickly fell asleep as Bronson drove. When the truck suddenly stopped, he was jostled awake. He then saw Bronson get out of the truck and approach someone on the sidewalk. Grady heard two gunshots, moved to the driver's seat, and drove the truck in reverse down the street. He parked the truck two blocks away. Realizing he did not have his cell phone, he decided to walk to a gas station to make a call; when he got there, the police detained him briefly. He later went home to sleep and was arrested the next afternoon.

Bronson's account differed in a few crucial respects, though it was largely consistent with Grady's. Bronson swore that he did not shoot the victim. He recalled that Grady approached him at the casino and suggested that they rob the victim and his friends, who Grady believed had won $30,000 at roulette. Bronson agreed, and they followed the victim from the casino to his Chicago home in Bronson's truck. When the victim got out of his car, Grady left the truck and approached the victim, who knocked Grady to the ground after a brief struggle. Bronson said that he was the one who then reversed the truck, heard gunshots, and left. At that point Bronson returned to the apartment that he and Grady sometimes shared. Around 6:00 a.m. Grady returned, told Bronson that he had lost his phone and gun (which he worried might have his fingerprints) and went out again to find them.

By the time the police were able to respond to the shooting, the victim was dead. Searching the scene, they found Grady's cell phone, which they used, along with surveillance video from the casino, to track him down and arrest him. They also searched Grady's apartment, where they discovered a gun. An expert witness later testified that it was the weapon that was used in the shooting.

At trial, the State pursued two theories of Grady's criminal liability. It devoted almost all its attention to the theory that Grady personally shot the victim during a botched robbery attempt, with Bronson aiding him as the driver. But the trial judge also instructed the jury that Grady could be convicted of first-degree murder if he or "one for whose conduct he is legally responsible" killed the victim. The judge explained to the jury that Grady was legally responsible for the conduct of a person whom Grady aided or assisted in the planning or

commission of an offense like armed robbery. During closing argument the State followed up: "Even if you don't believe [Grady was] the shooter … he is guilty of first degree murder. Guilty because he played a role." The jury convicted Grady of first-degree murder. But in answering a special verdict that was needed for a proposed sentencing enhancement, it found that the State did not prove that Grady had personally discharged the firearm that killed the victim. 730 ILCS 5/5-8-1(a)(1)(d)(iii). The court sentenced Grady to 60 years' imprisonment. Bronson, in contrast, received a sentence of only 24 years, presumably thanks to his cooperation.

On direct appeal, Grady unsuccessfully argued (through counsel) that the trial court wrongly sentenced him to 60 years in light of his minimal criminal history, potential for rehabilitation, and Bronson's 24-year sentence. Acting *pro se*, he then tried a state postconviction petition that, as relevant here, alleged ineffective assistance of appellate counsel for failure to argue that the evidence was insufficient to convict him of the murder. Grady argued that the State's theory was premised on Bronson's testimony that Grady was the shooter, yet the special verdict declining to find that Grady pulled the trigger necessarily meant that the jury had rejected Bronson's account. The state circuit court summarily dismissed Grady's petition. *People v. Grady*, 2019 IL App (1st) 163012-U ¶ 1.

Moving on to his state postconviction appeal, Grady, with the aid of counsel, focused on his claim that direct-appeal counsel was ineffective for "failing to challenge the sufficiency of the evidence." The evidence at trial fell short, he contended, for three related reasons. First, the "police stopped Grady moments after the shooting and found neither a weapon nor robbery proceeds on him." Second, "the key evidence against

him was the significantly impeached" and "self-serving testimony of" Bronson, who had ample reason to lie. Third, no forensic or eyewitness testimony established that Grady was the shooter, and the State's case relied on "inferences from minor circumstantial evidence." Grady added that counsel's "erroneous strategy [was] especially noticeable given that Grady's jury expressed doubt about the evidence, asking multiple questions over the course of … deliberation, at the conclusion of which it rendered a split verdict finding Grady guilty of murder but finding that the allegation that Grady personally discharged a weapon had not been proven."

The Illinois Appellate Court affirmed the dismissal after concluding that the evidence presented against Grady was "overwhelming" and thus more than sufficient for a guilty verdict. The court added that because a sufficiency challenge to the evidence would not have had a reasonable probability of success on appeal, Grady could not demonstrate the necessary prejudice under *Strickland v. Washington*, 466 U.S. 668, 692 (1984). The Illinois Supreme Court denied Grady's petition for leave to appeal. *People v. Grady*, 140 N.E.3d 266 (Table) (Ill. 2020).

Grady then petitioned for federal collateral relief pursuant to 28 U.S.C. § 2254. He argued that his counsel on direct appeal had been ineffective for failing to raise a sufficiency challenge based on the alleged discrepancy between the general verdict of guilt and the special-verdict finding. He reasoned that pulling the trigger was an "essential element" of his murder conviction, given the State's decision at trial effectively to limit itself to the theory that Grady was the shooter. On that assumption, he contended, it was "metaphysically impossible to reconcile" the jury's verdicts. At a minimum, he said, this

theory was far stronger than the ones state appellate counsel had chosen to raise. (Grady's petition included other claims, but they were not certified for appeal.)

Applying the "doubly deferential" standard of review to ineffective-assistance claims under section 2254, see *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), the district judge denied the petition. She reasoned that Grady's insufficient-evidence claim had no merit under Illinois law, which allows for a person charged as a principal to be convicted upon evidence that the person was an aider or abettor. See 720 ILCS 5/5-2; *Ashburn v. Korte*, 761 F.3d 741, 758 (7th Cir. 2014). The judge concluded that the Illinois Appellate Court reasonably applied *Strickland* in ruling that direct-appeal counsel competently declined to argue a doomed position—namely, that the special verdict meant that the murder conviction lacked sufficient evidence. The judge did, however, issue a certificate of appealability because, she said, reasonable jurists could differ on whether the state appellate court adequately addressed the implication of the inconsistent verdicts under *Strickland*. We appointed Kelly Mannion Ellis, of the firm of Winston & Strawn, to act as appellate counsel in this court, and we thank her for her service to her client and the court.

## II

On appeal, Grady maintains that the special verdict negated an essential element of the State's theory of the murder—that Grady was the shooter—and that the State's evidence was thus insufficient as a matter of law. This is a hard road to travel. We are empowered to grant relief only if the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also *Saxon v. Lashbrook*, 873 F.3d 982, 987 (7th Cir. 2017). Worse (from Grady's standpoint), federal collateral review of ineffective assistance claims is "doubly deferential," because federal courts must give "both the state court and the defense attorney the benefit of the doubt." *Minnick v. Winkleski*, 15 F.4th 460, 468 (7th Cir. 2021) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

As a threshold matter, the State contends for the first time on appeal that Grady's claim that appellate counsel was ineffective for failing to raise an inconsistent-verdicts challenge is procedurally defaulted, because he did not fully present it in the state postconviction proceedings. Rather, the State insists, Grady's claim focused on his appellate counsel's failure to argue that the State's case was insufficient because it relied on the "impeached and self-serving testimony" of Bronson, "inferences from minor circumstantial evidence," and the absence of robbery proceeds.

The State may be correct that Grady's claim is procedurally defaulted. To preserve a claim for federal collateral review, a petitioner must "fairly present the operative facts and legal principles controlling the claim" through a full round of state-court review, with the factual and legal substance remaining "essentially the same" when the petitioner moves to federal court. *Blackmon v. Williams*, 823 F.3d 1088, 1100 (7th Cir. 2016). Here, however, the focus of Grady's argument has shifted. At the post-conviction stage, he stressed the lack of evidence at trial. He mentioned the inconsistent verdicts, but only to emphasize weakness in the evidence, rather than to argue that the inconsistency itself established that the murder conviction is flawed. Now Grady is saying that as a matter

of Illinois law, the jury's special verdict negates an essential element of Illinois first-degree murder, and thus the guilty verdict cannot stand.

These are two different, albeit related, points, as the Supreme Court itself recognized when it cautioned courts against confusing sufficiency-of-the-evidence review with "the problems caused by inconsistent verdicts." *United States v. Powell*, 469 U.S. 57, 67 (1984); see also *People v. Rosalez*, 2021 IL App (2d) 200086, ¶ 171) ("A sufficiency challenge is independent of any interplay between the general verdict and the special interrogatory.").

But procedural default is not a jurisdictional argument, and so it can be lost if a litigant does not raise it properly. That is what happened here. Procedural default is an affirmative defense, *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004), but the State did not raise it until its appellate brief in this court. The State had thus waived the right to rely on that defense. It knew that Grady had argued in the district court that the jury "render[ed] inconsistent verdicts that were metaphysically impossible to reconcile." In the face of this clear reference to the inconsistent-verdict point, the State did nothing more than briefly acknowledge the argument. It did not mention procedural default. And this is not because the State was unaware of procedural default. In the district court, it argued that Grady procedurally defaulted a different claim (one not certified for appeal). We have ruled that raising the defense of default for one claim but not for another evinces an intent to waive the omitted one. *Eichwedel v. Chandler*, 696 F.3d 660, 669 (7th Cir. 2012). In short, we will reach the merits of Grady's argument.

Unfortunately for Grady, his argument founders at this final stage. The first problem is that inconsistent verdicts are generally not in themselves sufficient to justify federal collateral relief. *See Powell*, 469 U.S. at 69. The reason, *Powell* explained, is that seemingly inconsistent verdicts can favor either the defense or the government, but only the defense can take an appeal; the government normally cannot because of double-jeopardy constraints. This asymmetry "militates against review of such convictions at the defendant's behest." *Id.* at 65.

Second, in this particular case, the state court reasonably ruled that direct-appeal counsel was not deficient for declining to advance an inconsistent-verdict challenge, because the omitted argument was meritless as a matter of state law. See 28 U.S.C. § 2254(d)(1). At the time of Grady's trial, Illinois law provided that defendants could not challenge convictions solely on the basis that they were inconsistent with acquittals on other charges. *People v. Jones*, 797 N.E.2d 640, 647 (Ill. 2003) (adopting *Powell* rule). Illinois courts have since recognized that this rule applies to "personal discharge" interrogatories such as the one in Grady's case. See *People v. Alexander*, 2017 IL App (1st) 142170, ¶ 38. Under *Powell* and *Jones*, Grady's inconsistent-verdicts theory would not have had a "reasonable shot" of succeeding. *Walker v. Griffin*, 835 F.3d 705, 709 (7th Cir. 2016). Thus, it was reasonable for the state court to conclude that Grady could not show either defective performance or prejudice for purposes of *Strickland*.

Grady responds that the inconsistent-verdicts argument was nonetheless more promising than the points appellate counsel did raise. A competent appellate lawyer, he urges, would have tried to take advantage of an exception to *Powell*

(and presumably *Jones*) that some federal courts have recognized. This exception allows acquittal where a special-verdict finding negates an essential element of an offense. *E.g., United States v. Randolph*, 794 F.3d 602, 612 (6th Cir. 2015). But neither the Illinois courts nor this court (let alone the Supreme Court) has adopted this approach.

Finally, even if there were such an exception, it would not help Grady. Illinois courts have held that personal discharge of a firearm is not an element of first-degree murder under Illinois law. *Alexander*, 2017 IL App (1st) 142170, ¶ 47. While the State's primary theory at trial was that Grady was the principal and Bronson the accomplice, the prosecution did just enough to preserve an accountability theory under which the jury could find Grady guilty of murder if he aided and abetted Bronson. It so argued at closing; the trial court instructed the jury that it could consider that theory; and Grady lodged no timely objection. With that much in place, we can see how the two verdicts can be reconciled. The jury could have credited most of Bronson's evidence, while at the same time drawing the line at his effort to convince them that he did not fire the fatal shots. Ample evidence showed that Grady and Bronson were accomplices. The jury may simply have thought that Bronson was the triggerman and Grady was guilty as an accomplice. That reconciles its finding that Grady did not shoot the victim with its finding of his ultimate guilt. There is no reason to think that this reconciliation was not apparent to appellate counsel—or at least so the Illinois Appellate Court reasonably could have concluded.

We therefore AFFIRM the judgment of the district court denying Grady's petition for a writ of habeas corpus.